# BURNS ARCHER *et al.*

*v.*

## THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY.

*Filed at Mt. Vernon January 18, 1882—Rehearing denied May Term, 1882.*

1. JURISDICTION IN CHANCERY—*remedy at law.* Where a party has a full and adequate remedy at law, a court of equity will not assume jurisdiction, but will remit the party to whatever remedy or defence he may have in the courts where such matters are properly cognizable.

2. INJUNCTION—*to restrain collection of taxes—remedy at law.* A court of equity will not enjoin a county collector from applying for judgment against the right of way of a railroad company for taxes due on its capital stock, on the ground the complainant claims to have succeeded to such company's rights, the defence, if any, being available at law, and this especially when the complainant has obligated itself by contract to pay such taxes.

3. SAME—*where railroad company having the use of another road agrees to advance money to the latter to pay its taxes.* A court of equity will not give a party relief against that which it is his duty to do, by contract or otherwise. So, where a complainant corporation has agreed with a railway company, for a consideration, to make advances to pay its taxes, when necessary to maintain its organization, and has been put into possession of all its property, it will not be allowed to enjoin the collection of such taxes which are proper and legal, on the assumed ground of its ownership of the property.

4. SAME—*whether foreign corporation may complain of tax against a domestic corporation.* A foreign corporation can not interfere by bill to enjoin taxes legally or illegally assessed, under the laws of this State, against a domestic corporation, unless the former will itself be injuriously affected by the collection of such taxes, as to its property or otherwise.

5. TAXATION—*as to ownership of property—not lost by contract for its use, etc.* A contract between two railroad companies, whereby one is to take charge of the road of the other, with all its equipments, and operate the same as a continuous line with its own line, and exercise all the rights and privileges of the other under its franchise, for a consideration named, does not change the ownership of any of the property of the latter company, and the rolling stock of such company is liable to distraint for taxes assessed upon its capital stock. Parting with the possession and use of a thing does not always imply a parting with the absolute ownership.

6. RAILROAD—*power to lease to a foreign corporation—a charter construed.* Without enabling legislation a railroad company possesses no power to lease its road to a foreign corporation, and surrender its road and franchises into its control.

7. Under an amendment to a railroad charter, providing that the company shall have power to consolidate and connect its road with any other continuous line of railroad, either in this State or in the State of Indiana, upon such terms as may be agreed upon between the companies uniting or connecting, and for that purpose giving full power to the company to make and execute such contracts with any other company as will secure the object of such consolidation or connection, the domestic corporation can only do one of two things: either consolidate its road with another railroad in this or the State of Indiana, or make an agreement for connection with such road, so as to secure a continuous line. Under such law it has no power to lease its road to a foreign railroad company.

8. SAME—*contract, whether for consolidation, or merely a connection with another road.* A contract between a railroad company of this State and a railroad company of Indiana, provided that upon the completion of the two roads to the State line, so as to connect, the Indiana company should take charge of and operate the road in this State, with its equipments, for 999 years, for which it was to be allowed sixty-five per cent of the gross receipts from all traffic moved on the line, or business done thereon, *as a* consideration for working and maintenance expenses, the remaining thirty-five per cent to be appropriated—first, to the payment of interest on the first and second mortgage bonds of the Illinois company, according to their priority; and second, all the surplus of said thirty-five per cent to be paid over to the Illinois company semi-annually, to be disposed of by it for the benefit of its stockholders; also, that if the thirty-five per cent should not, for any cause, be sufficient in amount to protect the interest on the mortgage bonds, and the sinking fund therefor, as they matured, together with the payment of the taxes, and proper costs of maintaining organization, so that the rights of stockholders might be preserved, then, in that event, the lessees should advance for the company whatever might be needed, to be accounted under yearly averages of the lease during the contract: *Held*, that the agreement was not a lease of the Illinois road, nor a contract of consolidation, but one of connection between the two roads, only, leaving the Illinois corporation the owner of the road, the franchise, and all its rolling stock, though in the use and under the control of the Indiana company.

APPEAL from the Circuit Court of Effingham county; the Hon. WILLIAM C. JONES, Judge, presiding.

Messrs. WISE & DAVIS, for the appellants:

The pretended lease from the St. Louis, Vandalia and Terre Haute Railroad Company to the Terre Haute and Indianapolis Railroad Company is null and void. Sess. Laws of 1865, p. 102.

The lease being null and void, appellee can only be regarded as the servant of the St. Louis, Vandalia and Terre Haute Railroad Company, or as the custodian of its property. *Thomas* v. *Railroad Co.* 11 Otto, 71; *Ottawa, Oswego and Fox River Valley R. R. Co.* v. *Black,* 79 Ill. 262; *Hays* v. *Ottawa, Oswego and Fox River Valley R. R. Co.* 61 id. 422.

The State has the common law right to sue for taxes. *Ryan* v. *Gallatin County,* 14 Ill. 78; *Dunlap* v. *Gallatin County,* 15 id. 7; *Town of Geneva* v. *Cole,* 61 id. 398.

If the lease be valid, the appellee, having therein agreed to advance for the lessor company sufficient funds to pay the taxes assessed against the latter company, is liable to a suit in behalf of the State and said counties for said taxes under said agreement, the same being for the benefit of the authorities entitled to the taxes.   *Hartford Fire Ins. Co.* v. *Olcott,* 97 Ill. 439, and cases therein referred to on page 454; *Illinois Fire Ins. Co.* v. *Stanton,* 57 id. 354; *Gantzert* v. *Hoge,* 73 id. 32; *Rogers et al.* v. *Herron et al.* 92 id. 583.

Messrs. DECIUS & EVERHART, for the appellant John W. Goodwin, in addition to the foregoing points, made the following among others:

As a general rule a court of equity will not interfere to restrain a tax on the ground alone that the tax is illegal. 3 Wait's Actions and Defences, 719, 721.

This same tax has been held by this court to be legal. *St. Louis, Vandalia and Terre Haute R. R. Co.* v. *Surrell,* 88 Ill. 535; *Hopkins, Receiver,* v. *Taylor,* 87 id. 436.

The legality of taxing capital stock has repeatedly been sustained by this court.   *Porter* v. *Rockford, Rock Island and St. Louis R. R. Co.* 76 Ill. 565; *Huck et al.* v. *Chicago and Alton R. R. Co.* 86 id. 352; *Chicago, Burlington and Quincy R. R. Co.* v. *Siders,* 88 id. 320.

It makes no difference to the public in which name the assessment of taxes is made.   A general or special property

is sufficient. *Kennedy* v. *St. Louis, Vandalia and Terre Haute R. R. Co.* 62 Ill. 396.

A foreign corporation has not the right to take control of the rights, property and franchises of a domestic corporation, and place itself, by lease or otherwise, between the taxing power and its property.

It is well settled that a court of equity will never entertain a bill to restrain the collection of a tax, or an officer from collecting the same, except in cases where the tax is unauthorized by law, or when it is assessed upon property not subject to taxation. *Cook County* v. *Chicago, Burlington and Quincy R. R. Co.* 35 Ill. 460; *Village of Nunda* v. *Village of Chrystal Lake,* 79 id. 311.

Mr. S. S. WHITEHEAD, for the appellant Burns Archer:

If appellee's claim is based upon the hypothesis of title to the property, either real or personal, it is fully estopped by its acts and conduct in inducing the assessment to be made against the lessor company. *Baker* v. *Pratt,* 15 Ill. 571, citing *Welland Canal Co.* v. *Hathaway,* 8 Wend. 483; *Degell* v. *Odell,* 3 Hill, 218; *Leeper* v. *Hersman,* 58 Ill. 218; *Chicago and Alton R. R. Co.* v. *Shea,* 64 id. 471.

The trustees of a railroad company, if they do business in the name of the company, are liable to be sued in that name, and their property, *i. e.* the property of the trustees, is responsible for the liabilities incurred by the railroad company while its trustees are transacting business under that name. *Wilkinson et al.* v. *Fleming,* 30 Ill. 353.

Lessees of railroads have always been held responsible for the obligations of the lessors, when those obligations affect the public. *Illinois Central R. R. Co.* v. *Kanouse,* 39 Ill. 278; *Toledo, Peoria and Warsaw Ry. Co.* v. *Rumbold,* 40 id. 143; 1 Redfield on Railways, (5th ed.) 618–620; *Chicago and Rock Island R. R. Co.* v. *Whipple,* 22 Ill. 105; *Ohio and Mississippi R. R. Co.* v. *Dunbar et al.* 20 id. 623; *Peoria*

*and Rock Island Ry. Co.* v. *Coal Valley Mining Co.* 68 id. 489.

The Terre Haute and Indianapolis Railway Company is, while lessee, the St. Louis, Vandalia and Terre Haute Railroad Company. *West* v. *St. Louis, Vandalia and Terre Haute R. R. Co.* 63 Ill. 545.

Messrs. GILMORE & WHITE, Mr. T. J. GOLDEN, and Mr. JNO. G. WILLIAMS, for the appellee:

The contract of February 10, 1868, between the St. Louis, Vandalia and Terre Haute Railroad Company and the Terre Haute and Indianapolis Railroad Company is valid. Both parties thereto had full authority under the law to execute it. Private Laws of 1867, sec. 13, p. 678.

That contract vested in appellee the absolute ownership of the rolling stock or equipment received by it under the contract.

The Terre Haute and Indianapolis Railroad Company acquired its title to the possession of the property embraced in this contract, free from the lien of taxes assessed against the capital stock of the St. Louis, Vandalia and Terre Haute Railroad Company in 1873, 1874 and 1875. *Gaar, Scott & Co. et al.* v. *Hurd,* 92 Ill. 315; *Binkert* v. *Wabash Ry. Co.* 98 id. 203.

Equity will interfere to prevent a sale of property which will create a cloud upon the real owner's title thereto. *Christie et al.* v. *Hale,* 46 Ill. 117; *Groves et al.* v. *Webber,* 72 id. 606.

Equity will also interfere to prevent a multiplicity of suits, or to prevent a simple trespass, if there be danger of irreparable injury. *Deming et al.* v. *James,* 72 Ill. 78; *Ryan* v. *Brown et al.* 18 Mich. 197; *Osborn* v. *Bank,* 9 Wheat. 738; *McCreary* v. *Sutherland,* 23 Md. 471; *Binkert* v. *Wabash Ry. Co.* 98 Ill. 203; High on Injunctions, sec. 796.

Mr. JOHN T. DYE, also for the appellee.

32—102 ILL.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case was exhibited by the Terre Haute
and Indianapolis Railroad Company, a corporation existing
under the laws of the State of Indiana, in the circuit court of
Effingham county, and as amended was against the collectors
of taxes in several counties named, and was to enjoin taxes
levied for State, county, and other purposes, on the capital
stock of the St. Louis, Vandalia and Terre Haute Railroad
Company, for the years 1873 to 1875, both years inclusive.
At the same time the taxes were levied on the capital stock
of the company, taxes for the same purposes, for the same
years, and by the same authorities, were also levied on the
tangible property of the company.    The bill contains an alle-
gation the taxes assessed on the tangible property of the com-
pany have been paid by complainant; but whether they have
or not, no relief is asked against such taxes.    On the hearing
in the circuit court, on the issues formed by the pleadings,
and on consideration of the evidence submitted by the
respective parties, the court decreed substantially the relief
asked by the bill.    As the litigation concerns the public
revenue, the collectors of the several counties named as
defendants have brought the case directly to this court on
appeal.

The bill contains an allegation the taxes levied and assessed
on the capital stock of the St. Louis, Vandalia and Terre
Haute Railroad Company, for the years 1873, 1874 and 1875,
have been added to the amounts assessed in the several
counties for the year 1878 on the property of the same cor-
poration.    A willingness is expressed by the bill to pay the
taxes for the year 1878, but the several officers charged with
the collection of taxes insist on collecting, with the taxes of
1878, the taxes remaining unpaid for the former years, as
previously stated.    The litigation, therefore, has respect only
to the taxes assessed on the capital stock of the St. Louis,

Vandalia and Terre Haute Railroad Company for the years 1873, 1874 and 1875.   By the bill, the validity of the taxes for those years is challenged, on account of some irregularity on the part of the Board of Equalization; but as the objection is not pressed upon the attention of the court in the argument, it will not be necessary to remark on this branch of the case, further than to say that similar objections taken to assessments on the capital stock of railroad corporations have been held in former decisions of this court to be unavailing, and the taxes decided to be valid.   As the discussion proceeds, the taxes assessed on the capital stock of the St. Louis, Vandalia and Terre Haute Railroad Company will be treated as valid assessments, and as valid and subsisting liens on the property of that corporation.

It is a proposition so plain it will not be controverted, that a foreign corporation may not interfere, by bill, to enjoin taxes, legally or illegally assessed under the laws of this State, against a domestic corporation, unless the corporation complaining will itself be injuriously affected by the collection of such taxes, as to its property or otherwise.   Two causes are assigned as grounds for relief,—first, the several collectors claim the right to collect the taxes assessed on the capital stock of the St. Louis, Vandalia and Terre Haute Railroad Company, for the years before mentioned, by distraint and sale of property, of which complainant obtained possession under a contract entered into with that company on the 10th day of February, 1868, and under which it still holds the property, and unless restrained, defendants will enforce their demands; and second, it is said defendants unlawfully set up a pretended right to advertise for judgment and sale to pay such taxes, property acquired by complainant of the St. Louis, Vandalia and Terre Haute Railroad Company, known and designated as right of way, and that unless restrained defendants will take judgment against such right of way and proceed to sell it.   The doing of either act it is charged defendants

propose to do, it is alleged, will work irreparable injury to complainants.

The property it is charged defendants are about to distrain for the payment of such taxes, is conceded to be the rolling stock with which the railroad of the company owing the taxes was originally equipped. That property, it seems, came into the possession of complainant under the contract of February 10, 1868, before mentioned, on the completion of the St. Louis, Vandalia and Terre Haute railroad, some time in the year 1870, and has ever since been in its control. The question most elaborated is, whether complainant has such an ownership in the rolling stock in its possession as will be protected from seizure for the payment of taxes owing by the corporation to which it previously belonged. It is to be observed the bill contains no allegation of ownership of such property in complainant, nor is the character of its interest therein defined. It is referred to as property "in possession" of complainant, as having been acquired under the contract of February 10, 1868; but no definition is given of the interest claimed, whether as lessee, or owner, or otherwise. It will perhaps assist to a better understanding of the case if the principal provisions of the contract under which complainant obtained possession of the rolling stock and line of road owned by the St. Louis, Vandalia and Terre Haute Railroad Company shall be first noted. That portion of the contract deemed necessary to an understanding of the questions discussed may be briefly stated.

It is set forth that in consideration complainant would, without delay, construct a first-class railroad, being an extension of the road it then owned from Indianapolis to Terre Haute, from the latter city to the State line of Indiana, upon such location as would connect properly and directly with the St. Louis, Vandalia and Terre Haute Railroad at the State line of Illinois, it being desirable such lines of road, when connected, should be operated by the Terre Haute and

Indianapolis Railroad Company, it was agreed that upon the completion of the road between East St. Louis and the Indiana State line on the route projected, complainant should take charge of and operate the same, with its equipments, for a period of nine hundred and ninety-nine years, for which complainant was to be allowed sixty-five per cent of the gross receipts from all traffic moved over the line, or business done thereon, as a consideration for working and maintenance expenses, the remaining thirty-five per cent to be appropriated, first, to the payment of interest on the first and second mortgage bonds of the St. Louis, Vandalia and Terre Haute Railroad Company, according to their priority; and second, all the surplus of said thirty-five per cent to be paid over to the St. Louis, Vandalia and Terre Haute Railroad Company, semi-annually, to be disposed of by it for the benefit of its stockholders.

It was further provided, if the thirty-five per cent should not, from any cause, be sufficient in amount to protect the interest on the mortgage bonds and the sinking fund therefor, as they matured, from time to time, together with the payment of taxes and proper costs of maintaining organization so the rights of stockholders may be preserved, then, in that event, the lessees shall advance for the company whatever amount may be needed, to be accounted for under yearly averages of this lease during the contract. It was also further agreed, complainant should enjoy all the rights, powers and privileges of the St. Louis, Vandalia and Terre Haute Railroad Company, so far as the same may be needful to maintain and operate the road; also, to impose and collect tolls and rates of transportation, and to do all other acts and things as fully and effectually as that corporation could do if operating the road itself, it being always understood and agreed the gross proceeds from through or joint traffic, or business, shall be divided on the *pro rata* basis per mile for the distance moved on the road of each party.

It will be noticed the parties themselves treat the instrument signed by them as a "contract," or "lease," and in the body of the writing the words "lease" and "lessee" are used; but it will hardly bear the latter definition, and yet find any sanction in the law for the making. The general law of 1865 made it unlawful for any railroad company of Illinois to consolidate its road with any railroad out of the State, or to lease its road to any railroad company out of the State, without having first obtained the written consent of all the stockholders of such railroad company residing in this State. There is no pretense the St. Louis, Vandalia and Terre Haute Railroad Company had the written consent of all or any of the resident stockholders, obtained before the execution of the contract of February 10, 1868. Even if a subsequent ratification could be regarded as equivalent with precedent consent, the evidence of a ratification at the stockholders' meeting in 1872 is not so satisfactory as to give it any force. It does not appear whether any of the resident stockholders were present at that meeting. It was a stockholders' meeting, but whether they were residents of this State is not proven, nor can any presumptions be indulged they were, or that any of them were residents of this State. Outside of the terms of the enabling law it is obvious a railroad company possesses no power to lease its road to a foreign corporation, and surrender its road and franchises into its control.

Counsel refer to section 13 of the act of 1867, amendatory of its charter, as conferring power upon the Illinois company contracting, to make the agreement of February 10, 1868. That section, it will be noticed, confers no power on the company to lease its road to a foreign corporation, and surrender to such corporation its franchises. By that act it was provided the company shall have power to consolidate and connect its railroad with any other continuous line of railroad, either in this State or in the State of Indiana, upon such terms as may be agreed upon between the companies uniting

or connecting, and for that purpose full power was given to the company to make and execute such contracts with any other company as would secure the object of such consolidation or connection.   It is plain that under this amendment to its charter the company could only do one of two things : either consolidate its road with another railroad in this State or in the State of Indiana, or make an agreement for connection with such road, so as to secure a continuous line.   The agreement of February 10, 1868, was not for the consolidation of the roads of the companies signing it.   Both corporations retained their separate existence, and it does not appear it was ever contemplated the two roads should be merged into one, and both corporations pass to one management.   The very terms of the agreement are inconsistent with the idea of consolidation.   It follows, then, it was simply a contract for connecting the railroads of the respective companies, so as to secure a continuous line between distant terminal points. Both companies signing the agreement had full authority from the States creating such corporations to make such an agreement, and placing that construction upon it, the contract is valid, otherwise it would be void, because *ultra vires.*

Construing the agreement, as must be done, as a contract between the companies for connecting their respective railroads, so as to secure a continuous line between certain points, what interest did complainant acquire under the contract in the rolling stock and franchises of the Illinois contracting company?   The simplest definition, and the one most consistent with the end to be attained, is the right of possession and use,—that is, the right to use the rolling stock for carrying passengers and conveying freights over the road, and, under the franchise, to impose and collect fares and tolls. That is the plain reading of the contract.   Consistently with this construction the ownership of the rolling stock and franchise remained in the company, as before the making of the contract.   Parting with the possession and use of a thing

does not always imply a parting with the absolute ownership. The fact the possession and the use are parted with for a period of such duration, should the contract be performed, as that the tangible property would of necessity become worthless, does not change the character of the transaction. The franchise, the privilege of which is contracted for, is property as enduring as the contract itself. It would hardly be insisted the company had, by its contract with complainant, parted with the ownership of the franchises conferred upon it by the State. It is therefore clear the ownership of the rolling stock and the franchise remained in the company, subject only to the management by complainant, consistently with the terms of the contract. It is still the property of the tax-debtor, and distraining the tangible property of the company for the payment of its taxes is, in no sense, taking complainant's property to pay taxes owing by another company.

As respects the other ground assigned for relief, should the right of way be advertised, and the several collectors should apply for judgment against it for taxes due from the company for the years mentioned, any defence that could be made, either by complainant or the tax-debtor, could be more appropriately made in the several county courts where such proceedings may be instituted. Where a full and adequate remedy is provided in a court of law, equity will not assume jurisdiction, but will remit the party to whatever remedy or defence he may have in the courts where such matters are properly cognizable.

There is another reason, having great force, why this bill should be dismissed. It is, because equity will not give a party relief against that which it is his duty to do. It has already been stated that if the thirty-five per cent to be paid to the St. Louis, Vandalia and Terre Haute Railroad Company should, from any cause, not be sufficient to protect the interest on the mortgage bonds, and sinking fund therefor, as

they mature, from time to time, together with the payment of taxes and proper costs of maintaining organization so that the rights of stockholders might be preserved, then it became the duty of complainant to "advance for the company" whatever amount might be needed, to be accounted for under yearly averages during the period of the contract. No explanation could make this clause of the contract better understood than it is by its plain reading, giving to the words employed the meaning usually attached to them. Clearly it was the intention of the parties to the agreement that both the organization of the St. Louis, Vandalia and Terre Haute Railroad Company and its property should be preserved for the benefit of its stockholders. The mortgage bonds were to be provided for as they matured, from time to time, and the taxes upon the tangible and intangible property of the company should be paid, to the end it might not be subjected to sale for the payment of either the mortgage bonds or the taxes assessed against it. That was indispensable to the preservation of the railroad property for the benefit of the stockholders and complainant. As both corporations had a vital interest in the preservation of the property, the contract in this respect is a most reasonable one for the security of both parties. It is plainly expressed, that in case the thirty-five per cent, for any reason, should not be sufficient in amount to protect the property in the particulars mentioned, complainant was obligated to "advance for the company" whatever amount might be needed,—not to *loan* the money to the company, as the argument assumes, but to "advance it for the company." Advance it to whom, for the company? Evidently to the parties entitled to receive it. This is a most valuable privilege for complainant, otherwise it would have no mode of securing the property for its benefit under the contract. If the money was to be loaned to it, the debtor company might fail to apply it in reduction of the indebtedness charged upon the property, to the prejudice of complainant. It is only by

advancing the money needed to parties entitled to receive, as the contract provides, that complainant can preserve the property for its own use under the contract, or for the benefit of the stockholders in the debtor company. The taxes involved are a legal charge upon the property of the company owing them. It is admitted by the bill the thirty-five per cent has not been, and is not, sufficient to pay all the amounts chargeable to the company for the purposes specified. The very contingency has arisen when it becomes the duty of complainant to advance the money needed for—not to—the company for payment of these taxes. It makes no difference whether the taxes were assessed on the capital stock or the tangible property of the company. It is as much the duty of complainant to pay one tax as the other. Had complainant performed its agreement in this regard, no necessity would have existed to invoke the aid of a court of equity in the premises. As before remarked, under the former decisions of this court no defence could be made to these taxes on its capital stock by the company, and certainly complainant can urge no objection the tax-debtor could not urge. That which concludes the party owing the taxes will be equally conclusive upon all others, no matter how interested. Equitably complainant is entitled to no relief.

The decree of the circuit court will be reversed, and the bill dismissed for want of equity.

*Decree reversed.*

Mr. JUSTICE SCHOLFIELD took no part in the consideration of this case.