SEBASTIAN FIETSAM

*v.*

JAMES M. HAY *et al.*

*Filed at Mt. Vernon September 28, 1887.*

1. FRANCHISE—*defined.* The word "franchise" is often used in the sense of privileges generally, but in its more appropriate and legal sense the term is confined to such rights and privileges as are conferred upon corporate bodies by legislative grant. It is nothing more than the right or privilege of being a corporation, and of doing such things, and such things only, as are authorized by the charter.

2. SAME—*in whom vested.* It follows, from the very nature of a corporation, that a franchise, or the right to be and act as an artificial body, is vested in the individuals who compose the corporation, and not in the corporation itself.

3. SAME—*not the subject of sale or transfer.* A corporation, in the absence of statutory authority, has no right or power to sell or transfer the franchise, or any property essential to its exercise, which it has acquired under the law of eminent domain.

4. CORPORATION—*defined.* A corporation aggregate is an artificial being created by law, and composed of individuals who subsist as a body politic, under a special denomination, with the capacity of perpetual succession, and of acting, within the scope of its charter, as a natural person. It has, for most purposes, a distinct identity from that of the individual corporators.

APPEAL from the Circuit Court of St. Clair county; the Hon. B. H. CANBY, Judge of the City Court of East St. Louis, Judge, presiding, at the request of the Hon. WILLIAM H. SNYDER.

Mr. F. A. McCONAUGHY, for the appellant:

It is not proposed to argue this question. The authorities do not seem to be clear or uniform. Those which seem to support the position of the appellant are as follows: *Stewart* v. *Hargrove,* 23 Ala. 436; *Lewis* v. *Gainsville,* 7 id. 85; 3 Greenleaf's Cruise, chap. 3, secs. 20-22.

A number of cases holding *contra* are cited in notes to the texts, in Angell & Ames on Corp. sec. 191; Morawetz on Pri-

vate Corp. sec. 928. As far as the cases there cited, however, have been examined by counsel, the charters involved were other than banking corporations.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The People's Bank of Belleville, incorporated under a special act of the legislature, approved and in force March 27, 1869, having become insolvent, on the 17th of April, 1878, made a general assignment of all its property and effects for the benefit of creditors. The assignee presented a petition to the county court of St. Clair county, at its March term, 1887, for leave to sell "all the rights, privileges, powers and immunities which were granted by the said act incorporating said bank." The judge of the county court being interested in the result of the proceeding, the venue was changed to the circuit court of St. Clair county, where, upon due consideration of the petition, that court entered an order dismissing the same. The present appeal is from the order of dismissal.

The correctness of the decision of the circuit court depends entirely upon whether the title to the franchise created and conferred by the bank charter passed as an asset of the bank, to the assignee, under the assignment. That its language is sufficiently comprehensive and adequate to pass the franchise to the assignee, if, as matter of law, the bank could transfer it at all, we have no doubt. This is not questioned. The question, therefore, is, whether a corporate franchise, in the absence of statutory authority, is in law capable of being assigned or transferred. Differently put, the question, as formulated by the parties themselves, is, "Did the franchise of the said bank pass with the deed of assignment to the assignee as a salable asset of the said bank?"

The word "franchise" is often used in the sense of privileges generally, but in its more appropriate and legal sense the term is confined to such rights and privileges as are conferred upon corporate bodies by legislative grant. It is in the latter sense,

alone, the word is now to be considered. The franchise proposed to be sold is a corporate franchise, and the artificial body or political entity to which it pertains is what is known to the law as an aggregate corporation. Such a corporation has been well defined to be, "an artificial being created by law, and composed of individuals who subsist as a body politic under a special denomination, with the capacity of perpetual succession, and of acting, within the scope of its charter, as a natural person." Now, a franchise is nothing more than the right or privilege of being a corporation, and of doing such things, and such things only, as are authorized by the corporation's charter. This right of a body of men to be and act as an artificial person, without, as a general rule, incurring individual responsibility, is declared by Blackstone to be "a royal privilege, or branch of the king's prerogative, subsisting in the hands of a subject." (2 Blackstone, 37.) Such right or franchise is defined by Bouvier to be "a certain privilege conferred by grant from government, and vested in individuals." (1 Bouvier, 545.) Now, it is clear from these definitions, and from the very nature of a corporation, that a franchise, or the right to be and act as an artificial body, vests in the individuals who compose the corporation, and not in the corporation itself. This fact, we think, is not without significance in reaching a conclusion upon the main question to be determined, outside of the numerous authorities bearing directly on the subject.

It will be kept in mind that the corporate body, for purposes of ownership, and, indeed, for most purposes, has a distinct identity from that of the individual corporators. The latter may be wealthy, when at the same time the former is insolvent, and *vice versa.* The corporation has no right to appropriate, sell, or otherwise dispose of any of the property or effects of a corporator. The relation of debtor and creditor may subsist between them in the same manner as between the company and other persons. The company's entire prop-

erty may be swept away from it by sequestration, or other means, and yet its franchises will remain vested in the corporators until they are either abandoned or forfeited to the State. All these propositions are familiar to the courts and the profession, and are well sustained by authority.

If, then, the franchise is vested in and belongs to the corporators, and not to the corporation itself, how could the latter transfer or assign it to another? On the plainest of principles this could not be done without legislative authority for that purpose, and we find nothing, either in the statute or the company's charter, conferring such authority. While it is conceded the legislature might confer on the artificial body the power to sell or assign the franchise to strangers, yet this would be, in effect, to authorize it to commit a species of suicide, for it is manifest the corporation could not exist a moment after the franchise conferred upon its members had been transferred to others. Indeed, when we consider the attributes and essential elements of corporate existence, resulting from the grant of the franchise, and without which the artificial body could not accomplish the objects of its creation or perform the duties imposed upon it by law, the sale or assignment of the franchise without special legislative authority would seem to be wholly inadmissible. It is proposed here, it will be noted, to sell simply the franchise of the bank. Assuming this can be done, the question arises, what would be the effect of such a sale? It clearly could not have the effect of making the purchasers, if more than one, an aggregate corporation, with the general banking powers conferred by the bank charter. To assert such a proposition would be simply startling; and yet, if in such case the purchasers would take anything at all, they certainly could not take less than the right to be a banking corporation, with all the powers and privileges conferred by the charter for these rights,—are of the very essence of the franchise; and consequently, the one could not be thus acquired without, by the same act, securing the others,—a view

which, as already indicated, has no sanction in reason or authority.

While statements are to be found on this subject in some of the text books, as well as in some of the decided cases, which can not be reconciled with the conclusion we have reached, yet we are clearly of opinion that a corporation, in the absence of statutory authority, has no right to sell or transfer its franchise, or any property essential to its exercise, which it has acquired under the law of eminent domain. This proposition, in our judgment, is sustained both by reason and the decided weight of authority. *Black et al.* v. *Delaware and Raritan Canal Co.* 24 N. J. Eq. 455; Freeman on Executions, secs. 179, 180; Pearce on Railroads, 496-1; Jones on Mortgages, sec. 161; Rorer on Judicial Sales, (2d ed.) 222; *Archer* v. *Terre Haute and Indianapolis Railroad Co.* 102 Ill. 493; *Bruffett* v. *Great Western Railroad Co.* 25 id. 353; *Chicago and Rock Island Railroad Co.* v. *Whipple*, 22 id. 105; *Ottawa, Oswego and Fox River Valley Railroad Co.* v. *Black*, 79 id. 262.

The circuit court having reached this conclusion, its order and judgment will be affirmed.

*Judgment affirmed.*