## DE DIEGO *v.* THE HOUSE OF DELEGATES.

### APPLICATION for a Writ of Mandamus.

No. 6.—Decided February 4, 1904.

HOUSE OF DELEGATES—POWERS.—Under section 10 of the Organic Act the House of Delegates of Porto Rico has power to consider and determine whether the office of its own members shall be deemed vacant.

MANDAMUS—LEGISLATIVE BODIES.—The writ of *mandamus* does not lie to compel a legislative body to exclude from its number one or more of its own members.

ID.—HOUSE OF DELEGATES—CORPORATION.—The House of Delegates is not a corporation according to the Civil Code, nor is it included within the provisions of section 2 of the Law of Mandamus of 1903.

ID.—The House of Delegates of the Legislative Assembly of Porto Rico is not subject to a writ of *mandamus* issued by the Supreme Court of Porto Rico.

ID.—ACTS OF A DISCRETIONARY AND MINISTERIAL CHARACTER.—A writ of *mandamus* does not lie to compel the performance of acts entrusted to the discretion of a public officer, its scope being limited to the performance of acts of a ministerial or executive character.

The facts are set out in the opinion.

*Messrs. de Diego* and *Díaz Navarro,* for relators.

MR. JUSTICE MACLEARY rendered the opinion of the court.

En la presente causa el Señor De Diego con nueve miembros más de la Cámara de Delegados, presentó á esta Corte una solicitud de auto de Mandamus para obligar á la Cámara á declarar vacantes los asientos de cinco Delegados porque no han asistido á la presente sesión durante los primeros diez días de la misma.

Dichos Delegados fundan su petición en la Sección 210 del Código Político, que á la letra dice:

"Si mientras duran los trabajos de una legislatura de la Asamblea Legislativa, algún miembro de la Cámara de Delegados permaneciere ausente de sus tareas por más de cinco días consecutivos, sin el permiso de la Cámara de Delegados, se considerará su cargo vacante, y el Gobernador podrá convocar á elección para cubrir dicha vacante, según prescribe la ley".

Los solicitantes alegan que ciertos delegados, cuyos nombres se expresan, han estado ausentes durante más de cinco días consecutivos, y que el Señor de Diego hizo una moción en la Cámara para declarar vacantes los asientos de dichos Delegados, la que discutieron, él por una parte, y el Señor Don Juan Hernández Lopez por otra, poniéndose luego á votación por el Speaker, con resultado negativo y la Cámara, de esta manera, rehusó declarar vacantes los asientos de los citados miembros.

La Sección 30 de la Ley Foraker prescribe:

"Que la Cámara de Delegados será el único Juez de las elecciones, listas, y capacidad de sus miembros, y ejercerá las mismas atribuciones con respecto á la dirección de sus procedimientos que usualmente competen á cuerpos legislativos parlamentarios".

Bajo la sección de la ley citada la Cámara tuvo poder amplio para considerar y determinar si estaban ó no estaban vacantes los asientos mencionados, como se ha dicho en la presente, lo que ha resultado negativamente, no obstante el texto de la Sección 210 del Código Político arriba citada.

In this case Señor de Diego with nine other members of the House of Delegates made an application to this court for a mandamus to compel the House to declare the seats of five other members vacant, because they had not attended the first ten days of the present session.

Their petition is based on section 210 of the Political Code, which reads as follows:

"If while a session of the Legislative Assembly is pending, any member of the House of Delegates shall absent himself from his duties for more than five consecutive days without the consent of the House of Delegates, his office shall be deemed vacant, and the Governor may issue a writ of election to fill such vacancy, as prescribed by law."

The applicants allege that certain delegates, naming them, have been absent for more than five consecutive days, and that a motion was made by Señor de Diego in the House to declare their seats vacant, which was discussed by himself on the one part, and by Señor Don Juan Hernández López on the other part, and put to a vote by the speaker, which resulted in the negative, the House thereby refusing to declare the seats of the members mentioned to be vacant.

Section 30 of the Foraker Act provides:

"That the House of Delegates shall be the sole judge of the elections, returns, and qualifications of its members, and shall have and exercise all the powers with respect to the conduct of its proceedings that usually appertain to parliamentary legislative bodies."

Under the section of the law above quoted the House had the full power to consider and determine whether or not the seats mentioned were vacant, and as stated herein it has determined that fact in the negative, notwithstanding the language of section 210 of the Political Code above quoted.

Una solicitud á una Corte Judicial para mandamus contra un cuerpo legislativo, obligándolo á expulsar á uno ó más de sus miembros es una anomalía en la jurisprudencia americana.    Hasta donde he llegado en mis pesquizas ningún caso semejante ha podido encontrarse en los anales de litigios Americanos.    Ciertamente no existe semejante caso en los informes de las decisiones de la Corte Suprema de los Estados Unidos.

El Señor Wood en su obra de mandamus dice:

"Habrá lugar al auto de mandamus, en casos propios contra cortes inferiores, corporaciones y funcionarios ministeriales".

Ciertamente la Legislatura no se puede considerar entre estas tres clases.    Nuestro propio estatuto sobre mandamus dice lo siguiente:

"El auto de "Mandamus" podrá dictarse por el Tribunal Supremo ó por las Cortes de Distrito ó por cualquiera de sus magistrados ó jueces cuando se hallen en el ejercicio de sus funciones ó en sus oficinas, y se dirigirá á cualquier tribunal inferior, corporación, junta ó persona obligada al cumplimiento de un acto que la ley particularmente ordene como un deber resultante de un empleo, cargo ó función pública: pero aún cuando puede requerir á un tribunal inferior ó cualquiera de sus jueces para que adopte este criterio, ó para que proceda al desempeño de cualquiera de sus funciones, el auto no puede tener dominio sobre la discreción judicial".

Esta es sustancialmente una ampliación del precepto declarado en el libro-texto arriba citado, y ciertamente la Cámara de Delegados no podría considerarse igual á ninguna de las clases mencionadas en dicho estatuto, á no ser que se dijera que es una corporación, pero tampoco puede considerarse, propiamente, como tal.    El Canciller Kent la define así:

"Una franquicia poseída por uno ó más individuos, que subsisten

An application made to a judicial court for a *mandamus* against a legislative body, compelling it virtually to expel one or more of its own members, is an anomaly in American jurisprudence. No similar case can be found, so far as my investigation extends, in the annals of American litigation. Certainly no such case exists in the reports of the decisions of the Supreme Court of the United States.

Mr. Wood, in his work on Mandamus, says:

"The writ of mandamus, in proper cases, will lie against inferior courts, corporations and ministerial officers."

Certainly the legislature does not fall within any of these three classes. Our own statute on *mandamus* reads as follows:

"The writ of mandamus may be issued by the Supreme Court or the District Courts, or any justice or judge thereof, during the term or at chambers, to any inferior tribunal, corporation, board or person to compel the performance of any act which the law specifically enjoins as a duty resulting from an office, trust or station, but though it may require an inferior tribunal, or any judge thereof, to exercise this judgment, or proceed to the discharge of any of its functions, it cannot control judicial discretion."

This is substantially an enlargement of the principle announced in the text-book above quoted, and certainly the House of Delegates could not be considered as falling under any of the classes mentioned in this statute, unless it might be claimed that it is a corporation, but it cannot properly be classed as such. Chancellor Kent defines a corporation as:

"A franchise possessed by one or more individuals, who subsist

como un cuerpo político, bajo una denominación especial, investidos por la ley con la capacidad de sucesión perpétua y de actuar en varios respectos, sea como fuere la asociación en cuanto á números, como un sólo individuo. 2 Kent's Com., 267.

Una corporación se define en Bouvier's Law Dictionary como sigue:

"Un cuerpo compuesto de una ó más personas, establecido por la ley, usualmente para algún propósito específico y continuado por una sucesión de miembros". 1 Bouvier's Law Dictionary, 443.

El Tribunal Supremo del Estado de Illinois define una Corporación de la manera siguiente:

"Un ser artificial creado por la ley, y compuesto de individuos que subsisten como un cuerpo político, bajo una denominación especial, con la capacidad de sucesión perpetua, y actuando dentro del alcance de su carta constitucional como una persona natural". 122 Ill., 293.

El Juez Bronson define el término de la manera siguiente:

"Una corporación agregada es una colección de individuos unidos en un cuerpo por tal concesión de privilegios que asegure una sucesión de miembros sin cambiar la identidad del cuerpo, y constituye los miembros, por el tiempo actual, capaces de hacer los negocios de la corporación como una persona natural". 1 Hill, N. Y., 62.

Nuestra ley sobre corporaciones, que se encuentra en los Títulos primero y segundo del Código Civil de Puerto Rico, no permitiría á cualquiera Cámara de la Asamblea Legislativa, ni á las dos juntas, clasificarse como corporación, ni pública ni privada. En vista de estas definiciones, la Cámara de Delegados no puede considerarse bajo ningún concepto como una corporación.

Así es que ya se atienda á los preceptos generales, ya á los mismos estatutos, la Cámara de Delegados de la Asam-

as a body politic, under a special denomination, and are vested by the policy of the law with the capacity of perpetual succession, and of acting in several respects, however numerous the association may be, as a single individual.'' (2 Kent's Com. 276.)

A corporation is defined in Bouvier's Law Dictionary as:

''A body consisting of one or more natural persons, established by law, usually for some specific purpose, and continued by a succession of members.'' (1 Bouvier's Law Dictionary, 443.)

The Supreme Court of Illinois defines a corporation in the following manner:

''An artificial being created by law, and composed of individuals who subsist as a body politic, under a special denomination, with the capacity of perpetual succession, and acting within the scope of its charter as a natural person.'' (122 Ill. 293.)

Judge Bronson defines the term as follows:

''A corporation aggregate is a collection of individuals united in one body by such a grant of privileges as secures a succession of members without changing the identity of the body, and constitutes the members for the time being capable of transacting the corporate business like a natural person.'' 1 Hill (N. Y.) 62.

Our law on corporations, which is found in titles I and II of the Civil Code of Porto Rico, would not permit either house of the Legislative Assembly or both together to be classified as corporations, either public or private. Tried by these definitions, the House of Delegates cannot be considered in any respect as a corporation.

Then whether we refer to general principles or to the statutes themselves, the House of Delegates of the Legisla-

blea Legislativa de Puerto Rico no está sujeta al auto de Mandamus expedido por este Tribunal.

La Constitución de los Estados Unidos, al definir los poderes del Congreso, en la Sección 5ª. del Artículo 1 á la letra dice:

"Cada Cámara será el Juez de las elecciones, listas y capacidad de sus miembros, y una mayoría de cada cual constituirá un "quorum" para determinar cuestiones, pero un número más pequeño podrá levantar la sesión día por día y podrá autorizarse para exigir la asistencia de miembros ausentes de tal manera, y bajo las penas que provee cada Cámara".

Este lenguaje es muy parecido á la sección de la Ley Foraker arriba citada, que hace la definición de los poderes de nuestra Asamblea Legislativa, y problablemente esta provisión en la Constitución, así como la bien conocida independencia del Departamento Legislativo del Gobierno Nacional, hasta ahora haya impedido que se formulara petición en ningún tribunal de los Estados Unidos, como la que aquí se presenta. Resulta claro, de la falta de autoridades sobre este punto, y de una lectura de los estatutos, y de la naturaleza del sistema de gobierno Americano, que no hay lugar al auto de mandamus en un caso como el que aquí se ha presentado.

Aún si hubiera lugar al mismo por parte de este Tribunal contra la Cámara de Delegados, no se podría expedir en el presente caso, porque al declarar vacante el puesto de un miembro, la Cámara tiene que ejercitar una discreción y su acción no es meramente ministerial, la cual solamente es la que podría gobernarse por los tribunales, mediante el auto de mandamus. En otras palabras, si el Speaker de la Cámara tuviera autoridad para declarar vacante el asiento de un miembro bajo ciertas condiciones, ejercitando su discreción, no habría lugar al mandamus de un Tribunal contra él, obligandole á hacerlo, y mucho menos habría lugar al

tive Assembly of Porto Rico is not subject to the writ of *mandamus* issuing from this court.

The Constitution of the United States, in defining the power of Congress, in article I, section 5, reads as follows:

"Each house shall be the judge of the elections, returns, and qualifications of its own members, and a majoity of each shall constitute a quorum to do business; but a smaller number may adjourn from day to day, and may be authorized to compel the attendance of absent members, in such manner, and under such penalties as each house may provide."

This language is very similar to that above quoted from the Foraker Act, defining the powers of our Legislative Assembly, and perhaps such a provision in the Constitution, as well as the well-known independence of the legislative department of the National Government, has heretofore prevented any such application as the one here presented from being made to any court of the United States. It is plain from the absence of authorities on this point, and from the reading of the statute itself, and from the nature of the American scheme of government, that a *mandamus* will not lie in such a case as the one presented.

Even if it would lie from this court to the House of Delegates, it could not be issued in the present case, because in regard to declaring a seat of a member vacant the House has a discretion and its action is not merely ministerial, such as alone can be controlled by the courts through the writ of *mandamus*. In other words if the speaker of the House had the authority to declare the seat of a member vacant under certain conditions, acting in his discretion, a *mandamus* would not lie from any court to him, compelling him so to do; much less would a *mandamus* lie compelling the House to take such action. (*State v. Elder*, 10 L. R. A., p. 796.)

mandamus obligando á la Cámara á tomar tales medidas. States v. Elder, X. L. R. A., p. 796.

Por lo tanto en ningún caso podrían los peticionarios en este caso lograr su objeto mediante el auto de mandamus. Esta Corte jamás pretendería asumir una jurisdicción que no le está conferida por la ley, y no desea intervenir en los derechos y los deberes de otros departamentos como el de la Asamblea Legislativa, ó la Cámara de Delegados, que constituye una parte de la misma.

La solicitud para el auto de mandamus en el presente caso será denegada.

*Denegada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández y Figueras.

El Juez Asociado Sr. Sulzbacher no tomó parte en la discusión de este caso.

---

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. FIGUERAS.

Se solicita un auto de Mandamus para obligar á la Cámara á que cumpla con el Artículo 210 del Código Político, declarando vacantes los cargos de Delegados para que fueron electos Don Carlos Cabrera, Don Luis Sanchez Morales, Don Federico Torregrosa, Don Darío Rola y Don George W. Fishback.

Esta es la única cuestión que debe considerarse, porque las resoluciones deben ser congruentes con las demandas y con las demás pretensiones deducidas oportunamente. Del respeto á este principio nos ha dado ejemplo reciente la Corte Suprema de los Estados Unidos al resolver el caso de la Señora Gonzalez, puesto que declaró solamente que no es extrangera y omitió toda otra clase de argumentos sobre si era ó no ciudadana Americana porque este extremo no fué á dicha Corte en el grado y forma procedentes.

Therefore in no event could the object of the relators in this case be accomplished through the writ of *mandamus.* This court would never assume a jurisdiction which is not conferred upon it by law, and has no disposition to interfere with the rights and duties of other departments, such as the Legislative Assembly, or the House of Delegates, constituting a part thereof.

The application for a writ of *mandamus* in this case must be denied.

*Denied.*

Chief Justice Quiñones and Justices Hernández and Figueras concurred.

Mr. Justice Sulzbacher did not take part in the decision of this case.

----

CONCURRING OPINION OF MR. JUSTICE FIGUERAS.

An application is made for a writ of *mandamus* to compel the House to comply with section 210 of the Political Code, by declaring vacant the seats of Carlos Cabrera, Luis Sánchez Morales, Federico Torregrosa, Darío Rola and Geo. W. Fishback, who had been elected delegates to said House.

This is the only question to be considered, because judgments must be responsive to the pleadings and other allegations duly advanced in the action. An example of the deference to this principle has been furnished us recently by the Supreme Court of the United States, upon deciding the case of Mrs. Gonzáles, when it declared only that she was not a foreigner, and omitted all further arguments as to whether or not she was an American citizen, this point not having properly come up before said court.

Por esto en el presente caso no deben generalizarse las consideraciones.

La Corte Suprema del Estado de Nebraska con fecha de 14 de Enero de 1891 ordenó un auto de mandamus solicitado por Thomas H. Benton contra Samuel M. Elder, speaker de la Cámara de Representantes. Tomo X del Lawyers' Reports, Annotated, página 796, y yo quizás en caso semejante estaría conforme con los razonamientos del Hon. Cobb., Cr. J., encargado de redactar la opinión de la Corte, en cuyo dictámen se desarrolla á mí juicio una doctrina justa y racional, llegando á afirmar dentro del caso que se resolvió que "ningún cuerpo legislativo tiene poder para interponer un artificio de parlamento en contravención á las expresas prescripciones de la Constitución del Estado".

Eludiendo, por tanto, toda generalización y limitándome á la cuestión hoy planteada, entiendo que esta Corte no puede intervenir en los actos legislativos ó discrecionales de la Cámara respetando así la independencia de los Poderes legislativo, ejecutivo y judicial.

El auto de mandamus se solicita contra la Cámara y además se funda la petición en el supuesto de que aquélla se ha negado á cumplir el Artículo 210 del Código Político ya citado, pero como esta disposición reserva á la misma Cámara la consideración de las vacantes á que dicho artículo se refiere, aquélla, después de una discusión en que intervino la mayoría y minoría, ha considerado como acuerdo final, y por mayoría de votos, que no deben declararse las vacantes y esta función y procedimiento, después de la moción presentada por el Delegado Don José de Diego, es el adecuado á toda resolución de la Cámara, de donde resulta que el acuerdo negativo se tomó en virtud de las facultades discrecionales que entraña el mismo Artículo 210.

Pero supongamos que esa disposición contiene un precepto imperativo y categórico, es decir, que la Cámara está obligada á declarar las vacantes, siempre resultará que la

For this reason, in considering the present case, no generalization should be made.

The Supreme Court of the State of Nebraska, under date of January 14, 1891, issued a writ of *mandamus* applied for by Thomas H. Benton against Samuel M. Elder, speaker of the House of Representatives (Lawyer's Reports Annotated, vol. 10, p. 796), and perhaps, in a similar case, I might agree with Chief Justice Cobb, who delivered the opinion of the court, in the conclusions whereof, to my thinking, a just and reasonable doctrine is enunciated, he even declaring, with respect to the case under consideration, that "no legislative body has the power to interpose a parliamentary contrivance in contravention of the express provision of the Constitution of the State."

Avoiding, therefore, all generalization, and confining myself to the question now at issue, I am of the opinion that this court cannot interfere with the legislative or discretionary acts of the House, thus respecting the independence of the legislative, executive and judicial powers.

The writ of *mandamus* is applied for against the House, the petition, moreover, being based upon the assumption that the House has refused to comply with section 210 of aforesaid Political Code; but inasmuch as the consideration of the vacancies referred to in said section is reserved, by this provision, to the House itself, the latter, after a discussion in which both the majority and minority took part, has by a majority voted finally decided that the seats should not be declared vacant; and this proceeding, after the motion presented by Delegate de Diego, is the proper one in all actions taken by the House, whence it follows that the decision overruling said motion was made on the strength of the discretionary powers implied in aforesaid section 210.

But let us assume that this provision contains a peremptory command; in other words, that the House is obliged to declare the office vacant; still, the House, as an entity, cannot

entidad Cámara no puede manifestar su pensamiento y voluntad sino por medio de acuerdo, y siendo el voto libre, siempre resultaría que obra dentro de facultades discrecionales, cualquiera que fuese el acuerdo que sobre las vacantes tomase.

Por esta sóla razón creo que debe denegarse el auto de mandamus que se ha solicitado, por D. José de Diego y D. Herminio Diaz, por su derecho propio, y en la representación que ostentan.

---

## EL PUEBLO *v.* GOITIA.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 55.—Resuelto en Febrero 8, 1904.

PRUEBAS CONTRADICTORIAS.—VEREDICTO.—SENTENCIA.—Es un principio de derecho bien establecido que en aquellos casos en que hubiere pruebas contradictorias, si los hechos probados son suficientes para justificar la sentencia, tanto ésta como el veredicto no deben ser objeto de modificación alguna.

ACUSADO.—CONSECUENCIAS NATURALES DE SUS ACTOS DELIBERADOS.—Se presume que todo acusado prevee las consecuencias naturales de sus actos deliberados.

NUEVO JUICIO.—DESCUBRIMIENTO DE NUEVAS PRUEBAS.—DEBIDA DILIGENCIA.—Para que una petición de nuevo juicio, fundada en el descubrimiento de nuevas pruebas, pueda prosperar, no solo es necesario acreditar que las pruebas han sido descubiertas recientemente, sino que hay que probar á satisfacción del Tribunal que la parte que las propone no hubiera podido descubrir la existencia de tales pruebas, con anterioridad al juicio, mediante el ejercicio de debida diligencia.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Ramos* (Juan R.).

Abogado del apelado: *Sr. Del Toro* (Fiscal).

EL JUEZ ASOCIADO SR. MACLEARY emitió la siguiente opinión del Tribunal.

El demandado en esta causa fué acusado del delito de acometimiento con arma mortífera, que se alega fué cometido en el día 24 de Marzo de 1903. Seis días después la acusa-

in any event give expression to its purpose and will, except by means of a decision, and the vote being free, it would always be found to act within its discretionary powers, whatever action it might take with regard to the vacancies.

For this reason alone, I am of the opinion that the writ of *mandamus* applied for by José de Diego and Herminio Díaz in their own behalf and as delegates should be denied.