THE STATE OF KANSAS, *ex. rel.* A. A. GODARD, *Attorney-general*, v. TOPEKA WATER COMPANY.

**No. 11,360.**   (60 Pac. 337.)

1. CORPORATIONS — *Franchise from City — Right to Mortgage.* A corporation organized under the laws of Kansas for the purpose of furnishing the inhabitants of a municipality with water had granted to it, by an ordinance of the city, the right to occupy its streets for the laying of pipes, erecting hydrants, and other privileges usually enjoyed by water companies, for the period of twenty years. The company executed a mortgage on all rights, privileges and franchises granted to it by the state, together with all its property used in and about the maintenance of a waterworks plant, and all income, rents, profits and emoluments derived therefrom, including revenue from all sources, to secure the payment of certain bonds. *Held,* that the mortgage created a valid encumbrance upon its property, including all rights to supply the city and its inhabitants with water derived under the ordinance mentioned.

2. ——— *Secondary Franchises May be Alienated.* Corporations cannot sell or mortgage those franchises received from the state which confer power upon them to exist as artificial bodies; but those franchises denominated as secondary, which include the privileges granted by a city to a water company, with the right to take tolls, etc., may, under our statute, be lawfully alienated or encumbered.

3. ——— *Foreign — Rule of Comity.* It is a rule of comity existing between states that private corporations authorized to transact business in the state of their creation will be permitted to carry on business in other states so long as they do not depart from the original authority conferred in their charters.

4. ——— *Charter Construed.* The charter of the Topeka Water Company (a New Jersey corporation) examined, and *held,* that power is granted therein to own and operate water-works in any or all of the states.

Original proceeding in *quo warranto*. Opinion filed March 10, 1900. Judgment for defendant.

STATEMENT.

THE facts in the case necessary to be considered are as follows : On September 5, 1881, the city of Topeka passed an ordinance, No. 400, which took effect Sep-

tember 7, entitled "An ordinance for the erection, construction and maintenance of water-works in the city of Topeka, Kansas, and to regulate the same." The material sections of the ordinance are as follows :

"SECTION 1. In consideration of the benefits to the city of Topeka, Kansas, hereinafter specified and provided for, there is hereby given and granted to the Topeka Water-supply Company the right and privilege, for the period of twenty years from and after the date of the passage of this ordinance, of supplying the city of Topeka, in Shawnee county, in the state of Kansas, and the citizens of said city of Topeka, with good, clear, healthful and wholesome water, well suited for domestic and manufacturing purposes ; said water to be supplied from the Kansas river, subject to the terms and conditions set forth in this ordinance, to be used for domestic, manufacturing and fire purposes.

"SEC. 2. That said company be and is hereby authorized to establish, construct, maintain and operate works in or adjacent to the city of Topeka, in the state of Kansas, to receive, take and store, purify, conduct and distribute in and throughout the said city of Topeka, water, and to extend aqueducts and pipes through any and all of the streets, avenues or alleys, or public grounds, or cross any bridge or stream ; to erect and maintain all necessary engines and machinery or other appliances necessary to such works for supplying said city and the inhabitants thereof with water of the character described in section one of this ordinance ; to take up all pavements and sidewalks upon said streets, avenues, alleys and public grounds and make such excavations therein as may be necessary to lay, repair, keep and maintain aqueducts and pipes below the surface of the ground for conveying and distributing water as aforesaid ; provided, such pavements and sidewalks shall be repaired and replaced in as good condition, as near as may· be, as they were before, and with all convenient speed.    The right in this section granted to continue to be enjoyed by said company for the term of its corporate exist-

ence ; but nothing in this section named shall be construed into an obligation on the part of said city to continue taking water from said company after the contract which may be made under this ordinance shall terminate.''

'' Sec. 5. The city of Topeka hereby agrees and obligates itself, after twenty years from the completion of said works, to extend the franchise herein granted to said company for the further term of twenty years or to acquire and become sole owner of said works, including all extensions and enlargements thereof and everything of every nature and description belonging and pertaining thereto, on payment therefor the fair and equitable value thereof, to be ascertained, if the parties cannot agree thereon, by the district court of Shawnee county, upon the petition of the city, and in such manner as the court may determine ; provided, that the party presenting such petition shall have served a copy thereof upon the other party at least fifteen days before the day of such presentation. In case of purchase of said works by the city the company shall be required to make, execute and deliver good and sufficient conveyance of title to said works to the city, clear of all encumbrances and liens ; provided, that if any such encumbrances and liens shall be left thereon by said company, then the full amount of such encumbrance and lien shall be deducted from the amount of the full price to be paid by the city to the company for said works, and the city shall hold the company harmless ; provided, that the city shall not be deemed nor held to be liable for a greater sum than the actual equitable value of said works ; and in case the city shall not purchase and become the owner of said water-works at the end of the first twenty years as herein provided, then and in that case it shall in like manner be required to purchase the same at the expiration of the second, third, and fourth twenty years, or extend their franchise to said company at the end of each of said terms for the then next twenty years.

'' Sec. 6. The city of Topeka hereby agrees to and does rent from said company, during the term of

twenty years and during the term of any extension of the franchise, one hundred and fifty hydrants, to be located along the fifteen miles of water-mains hereinafter provided for, said hydrants to be located as the mayor and city council may by resolution direct, said hydrants to be two-tip hydrants, and erected by the company as the pipes are laid in the ground; and the said city hereby agrees to pay as an annual rental for said hydrants the sum of seven thousand dollars, payable semiannually on the fifteenth days of January and July in each year, for the full term of twenty years and the term of any extension of this franchise from the completion of said work; and the said company hereby agrees to erect, whenever directed by said city, any additional hydrants said city may require on said fifteen miles of mains, at an annual rental of fifty dollars each; and in any future extensions of pipe, for every mile of such extension the company is to erect ten hydrants, for which the city shall pay the sum of five hundred dollars per annum, and the same proportionate rate for any fraction thereof, with the privilege of having other hydrants erected on such mile of extension. All private water-rates shall be paid monthly in advance.

"Sec. 7. When the number of hydrants, including the original one hundred and fifty, shall reach the number of three hundred, all public fire hydrants above this number shall be supplied with water by said company without additional rental; provided, that the city shall pay the cost of said hydrants and connections and expenses of putting in the same."

"Sec. 10. Said company binds itself, during the continuance of the contract which may be made under this ordinance, to furnish at all times for public and private use of said city and the inhabitants thereof a full and sufficient supply of good, clear, healthful and wholesome water, well suited for domestic and manufacturing purposes."

"Sec. 14. And said company are to, and by accepting the provisions of this ordinance agree to, furnish through said works, water of the character named in

the first section of this ordinance, so that it may be drawn off for domestic and manufacturing purposes through the pipes connecting with the mains of said works in all parts of the city where such pipes may be, and at all times after the completion of said works."

"SEC. 16. Any failure on the part of said company to comply with any of the provisions of this ordinance, either as to the amount of water or the quality of same, or any failure to furnish sufficient supply of water at all times, excepting in cases of unavoidable accidents, said company shall forfeit its franchise, and this charter shall be null and void."

This ordinance was accepted by the Topeka Water-supply Company, a corporation then duly existing under the laws of Kansas.

In December, 1889, a corporation was duly organized under the laws of this state known as The Topeka Water Company, with its principal office in the city of Topeka. On January 29, 1890, the mayor and council of the city of Topeka passed an ordinance, No. 1094, authorizing the Topeka Water-supply Company to assign and transfer to The Topeka Water Company all the rights, powers, franchises and obligations theretofore granted to it, and providing that the latter company should succeed to all the rights, duties, liabilities, powers, privileges and franchises, limitations and conditions, contained in ordinance No. 400, said assignment in no manner to prejudice any of the rights of the city of Topeka. On January 31, 1890, the Topeka Water-supply Company sold and transferred all its franchises, rights, things and property to The Topeka Water Company. On February 1, 1890, The Topeka Water Company executed to the Atlantic Trust Company (a New York corporation), as trustee for bondholders, a mortgage, or trust deed, on its property to secure the payment of bonds to an

amount not to exceed $1,500,000. The mortgage recited that The Topeka Water Company was authorized to operate a water plant in the city of Topeka, and was so doing under and by virtue of a grant from said city. It contained the following:

"Such mortgage, when recorded, shall be a lien upon all the property of this company, including all rights, privileges, franchises, tolls, income, rights of way, leases, grants, lines, equipments, and all other property, real and personal, of said company, now owned or which may be hereafter acquired."

A further recital of the mortgage is as follows:

"Now this indenture witnesseth, that the said party of the first part, for the purpose of securing the payment of the principal and the interest of the said bonds, when and as the same shall become due and payable, according to the tenor and effect of said bonds so made and executed, and in consideration of the premises and of the sum of one dollar, lawful money of the United States of America, to it in hand paid by the said party of the second part at the time of the execution and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, assigned, set over, released, conveyed and confirmed, and by these presents does grant, bargain, sell, assign, set over, release, convey and confirm, unto the said party of the second part and to its successor or successors in the trust hereby created, and to its, his or their assigns, all and singular the entire property of The Topeka Water Company, including all rights, powers, privileges and franchises which may have been granted to or conferred upon said party of the first part by the state of Kansas, or which may hereafter be so granted or confessed, together with all estate and property, real, personal or mixed, now owned or which may hereafter be acquired by the party of the first part, situated in the city of Topeka, Kansas, and all erections and buildings, all machinery, engines, reservoirs, pumps, wells, pipes and other constructions, tools, implements and fixtures of every

kind and nature, made, manufactured, constructed, built, laid, purchased, or in any way acquired in or about the construction, maintenance, and operation of said water-works, and all the income, rents, profits, emoluments and moneys derived from said water-works, and including any revenues from any other sources whatsoever.''

The Topeka Water Company having defaulted in the payment of interest on the bonds secured by this mortgage, an action was brought in the circuit court of the United States against it, the trust deed foreclosed, and its property so mortgaged sold under the decree in April, 1896.   The property was bid in at the sale by Charles F. Street, who represented the bondholders.   The sale was confirmed August 3, 1896. On August 6, 1896, defendant, Topeka Water Company, obtained a certificate of incorporation in the state of New Jersey.   The articles of incorporation are in part as follows :

'' The undersigned do hereby associate themselves into a company, under and by virtue of the provisions of an act of the legislature of the state of New Jersey, entitled : 'An act concerning corporations (revision 1896),' for the purposes, and with the powers hereinafter mentioned, and to that end do by this certificate set forth :

''*First.* That the name assumed to designate such corporation, and to be used in its business and dealings is 'Topeka Water Company.'

''*Second.* That the place in this state where the principal office is to be situated is Jersey City, in the county of Hudson, and the business of the company is to be conducted in said city, and in such other townships and cities in the state as the nature and progress of the business of the corporation shall from time to time render necessary or desirable.   The company shall have power and its object is to conduct its business and have one or more offices without the state of New Jersey, in such places in the several

states and territories of the United States of America as shall from time to time be found necessary or convenient for the purposes of the company's business.

"*Third.* That the objects for which this company is formed are to do any or all of the things herein set forth to the same extent as natural persons might or could do, and in any part of the United States of America, as principals, agents, or otherwise; and in furtherance, and not in limitation, of the general powers conferred by the laws of the state of New Jersey, it is hereby expressly provided that the company shall have also the following powers:

"(*a*) To build, construct, repair, purchase, own and operate a water-works plant, in the county of Shawnee, state of Kansas, and elsewhere, in the United States of America, for the purpose of supplying the city of Topeka, and the county of Shawnee, in the state of Kansas, and their inhabitants and those in the vicinity thereof, and other municipalities and their inhabitants and those in the vicinity thereof, with water for public, private, and domestic use, and for all purposes; also to erect and maintain necessary buildings, plant, machinery, pipes, fixtures and apparatus of every sort, and to acquire and purchase real or personal property necessary for the purposes of such corporation, for supplying the said municipalities and the inhabitants thereof, and those in the vicinity thereof, with water, for all purposes, including the acquisition by purchase, by manufacture or otherwise of all materials, supplies, machinery and other articles necessary or convenient for use in connection with and in carrying on the business herein mentioned, or any part thereof; and to carry on the business incidental thereto.

"(*b*) To hold, purchase, mortgage and convey real and personal property, in the county of Shawnee, state of Kansas, and elsewhere, in the United States of America, necessary for the purposes of such corporation, and to make and execute deeds of trust or mortgages upon its corporate property, real and personal, and all its rights, privileges and franchises now owned and hereafter to be acquired.

"(*c*) To manufacture, purchase or otherwise ac-

quire, hold, own, mortgage, pledge, sell, assign and transfer, invest, trade, deal in and deal with goods, wares and merchandise and property of every class and description.

" (d) To procure the company to be registered or recognized, to have one or more offices to carry on its operations and business, and unlimitedly to hold, purchase, mortgage and convey real and personal property in any state or territory of the United States of America.

" To do all such other things as are incidental or conducive to the above, and in general to engage in any and all lawful business whatever, necessary or convenient, with all the rights, privileges and powers now or hereafter granted by the laws of the state of New Jersey to corporations formed under this act.

" *Fourth.* The total amount of the capital stock of this company is to be one million five hundred thousand dollars ( $1,500,000 ) divided into thirty thousand ( 30,000) shares of the par value of fifty dollars ( $50) each, of which one thousand dollars ( $1,000 ) is the amount of capital with which said company will commence business.

" *Fifth.* The names and residences of the incorporators, and the number of shares subscribed for by each, the aggregate of which subscriptions is the said amount with which the company will begin business, are as follows :

| Name. | Residence. | No. of shares. |
|---|---|---|
| W. B. Hord | New York city, N. Y., | 18 |
| E. G. Maturin | Jersey City, N. J | 1 |
| H. W. Meen | Jersey City, N. J | 1 |
| | | 20 |

"*Sixth.* That the existence of said company shall begin on the 6th day of August, 1896."

The entire property purchased for the bondholders by Charles F. Street at the master's sale under the said decree of foreclosure was transferred to the To-

peka Water Company (the New Jersey corporation), and for more than two years last past it has been operating and maintaining the water-works plant in the city of Topeka formerly owned by The Topeka Water Company and the Topeka Water-supply Company, Kansas corporations. Within thirty days after the taking effect of chapter 10, Laws of 1898 (Gen. Stat. 1899, § 1211, *et seq.*), said Topeka Water Company fully complied with the provisions of section 3 of said act by filing with the secretary of state its written consent, irrevocable, that actions might be commenced against it in the proper courts in any county within the state of Kansas in which the cause of action arose, or in which the plaintiff might reside, by service of process on the secretary of state.

It is alleged in the petition that the Topeka Water Company was organized in the state of New Jersey for the purpose of evading the liabilities and responsibilities of the corporation and revenue laws of the state of Kansas, and if possible to avoid any control over said property by the Kansas courts; that the promoters of said corporation, at the time of its organization, owned no property, franchises, rights or privileges except in Shawnee county, Kansas, and that it was not the intention of said promoters of the Topeka Water Company to carry on or operate any business relating to said Topeka Water Company in the state of New Jersey, but that all of said business connected with said company, except trafficking in bonds and securities issued by said company, was to be carried on in Shawnee county, Kansas; that it is not such a corporation as could be organized under the laws of this state, nor would the laws or courts of this state permit the existence of, or the transaction of business by, such corporation in this state. The

other averments in the petition are not material to the consideration of the case.

In March, 1898, by virtue of proceedings in *quo warranto* begun in the name of the state in this court, the charter of The Topeka Water Company (the Kansas company) was annulled and a judgment rendered dissolving it as a corporation. (*The State v. Water Co.*, 59 Kan. 151, 52 Pac. 422.)   Oral testimony was admitted tending to show that the defendant corporation was organized under the laws of New Jersey for the purpose of owning and taking care of the property in Shawnee county, Kansas, and none other, and that it owns no other water-works property.   The plaintiff prays judgment ousting the defendant, Topeka Water Company, from exercising or claiming to exercise, within the city of Topeka or Shawnee county, any franchise, right or privilege of maintaining or operating water-works within said city, and for general relief.

*W. A. S. Bird*, for The State.

*Rossington, Smith & Histed*, for defendant.

The opinion of the court was delivered by

SMITH, J.:   There are two questions to be settled essential to a disposition of this case :   (1) Did The Topeka Water Company (the Kansas corporation), by its trust deed to the Atlantic Trust Company, convey to it, by way of mortgage, the franchises granted to the former by the city of Topeka ?   ( 2 ) Has the Topeka Water Company (the New Jersey corporation), under its charter, a right to own and operate a system of water-works in Shawnee county, Kansas, and to transact business in this state, to the extent claimed by it, under the rules of comity, or otherwise ?

In considering the first proposition, it must be noted that The Topeka Water Company, the mortgagor to the Atlantic Trust Company, by virtue of ordinance No. 1094, succeeded to all the rights, privileges and franchises conferred by the city of Topeka on the Topeka Water-supply Company. The Topeka Water Company, at the time it executed the mortgage, was a private corporation, endowed by law with certain prescribed powers, among others the following :

"To hold, purchase, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require." (Gen. Stat. 1897, ch. 66, § 13 ; Gen. Stat. 1899, § 1227.)

"Corporations shall have power to borrow money on the credit of the corporation not exceeding its authorized capital stock, and may execute bonds or promissory notes therefor, and may pledge the property and income of the corporation." (Gen. Stat. 1897, ch. 66, § 18 ; Gen. Stat. 1899, § 1232.)

It is earnestly claimed by counsel for plaintiff that The Topeka Water Company had no power to mortgage or convey its franchises granted by the state or the city of Topeka. As to the franchises received from the state we agree, but as to those privileges and rights conferred by the city, the law is well settled against the contention of counsel for plaintiff. There is a marked distinction between a franchise which is essential to the creation and continued existence of a corporation — a right to exist as an artificial being — a right conferred by the sovereignty of the state — and those rights subsidiary in their nature by which the corporation obtains privileges of more or less value, to the enjoyment of which corporate existence is not a prerequisite. A corporation exists by the will of a sovereign power. To this superior authority it owes an allegiance which it cannot abjure. It cannot, by a

bargain, sale, or mortgage, alienate or encumber its birthright, nor in any manner part with those accompanying powers granted by its creator which are essential to its existence and vitality. A corporation may exist without property. Therefore, when it sells or mortgages property owned by it, it does not impair its right to live — a privilege conferred by the state and called a franchise. The statutes above quoted expressly authorize a corporation to mortgage its property.

Counsel for the city treat the franchise to be a corporation and the franchise granted to the water company by the city, giving it a right to occupy the streets, erect hydrants, supply water, etc., as the same. The rights granted to the corporation by the municipality above mentioned have been defined by law-writers as secondary franchises, and the question involved here is treated by Thompson in his Commentaries on the Law of Corporations, section 6140, as follows :

" The courts are united upon the proposition that a corporation has no power, independently of the express grant of the legislature, to mortgage or otherwise alien *its franchise of being a corporation.* It follows that those who purchase, at a judicial or other sale, the property and franchises of a corporation, do not thereby *become a corporation.* The purchase may vest in them all that is bought, *as property*, but they cannot prosecute the enterprise, as being a corporation, until they have been duly incorporated. Nor are they entitled to the restriction upon individual liability of members or stockholders accorded to the stockholders of the old corporation. If they issue bonds before before becoming incorporated, they are liable thereon as ordinary obligors are ; and the fact that they use the name of the old corporation in issuing such bonds makes no difference. But, as already seen, the *secondary franchises* of a corporation are *assignable*, except

such franchises as are necessary to the performance of *public obligations*, and those are assignable only with the express consent of the legislature. The franchise of *receiving tolls* is a secondary franchise, which is in its nature assignable, at least with the consent of the legislature ; and it has been held that authority in the governing statute of a *plank-road company* ' to mortgage the road or *other property*,' carries with it the right to mortgage the franchise of receiving tolls, though not to mortgage any franchise essentially corporate in its nature, and such as cannot be enjoyed by a natural person."

Again, in section 6747, the author says :

"The *secondary franchises* of a corporation — that is to say, the peculiar *privileges* or *rights* which it may have received from the legislature under its *charter* or incorporating act, or from a municipal corporation under an *ordinance* by way of a *license* — are in the nature of *property*, and do not revert to the state upon the death of the corporation, but, being vendible, pass to a receiver or other representative of the corporation, among its other assets, to be administered for the benefit of its creditors ; and the corporation may make a valid sale thereof, in like manner with its other property, before it is dissolved."

The rule is that the primary franchise of being a corporation vests in the individuals who compose it and not in the corporation itself, while the secondary franchises, such as the right of a railway to construct and operate its road, or the right to operate a water plant and collect water-rents, are vested in the corporation. The principle stated has been generally approved by the courts in this country. (*Union Pacific Railroad Co. v. Lincoln County*, 1 Dill. 325, Fed. Cas. No. 14,378 ; *Memphis Railroad Co. v. Commissioners*, 112 U. S. 619, 5 Sup. Ct. 299, 28 L. Ed. 837 ; *Morgan v. Louisiana*, 93 U. S. 217, 23 L. Ed. 860 ; *The State, ex rel., v. Irrigating Co.*, 40 Kan. 96, 19 Pac. 349 ; *Joy v. The*

*Jackson and Michigan Plank Road Co.*, 11 Mich. 164; *Detroit v. Mutual Gas Light Co.*, 43 Mich. 594, 5 N. W. 1039; *Fietsam v. Hay et al.*, 122 Ill. 293, 13 N. E. 501.)

The mortgage to the Atlantic Trust Company pledged all the property of the water company, including all rights, franchises, tolls, income, right-of-way grants, etc., then owned or to be thereafter acquired by the corporation. No express reference was made in the mortgage to the contract between the city and the water company, but we think the rights obtained under the city ordinances passed to the mortgagee. The ordinances accepted by the water company were in the nature of contracts and were property within the meaning of the law. (*Railway Co. v. Campbell*, ante, p. 439, 59 Pac. 1051; *The West River Bridge Company v. Dix et al.*, 6 How. 534, 12 L. Ed. 535; *Long Island Water Supply Co. v. Brooklyn*, 166 U.S. 685, 7 Sup. Ct. 718, 41 L. Ed. 1165; *New Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Thomp. Corp. § 6747.) Under our statute, the words "personal property" include money, goods, chattels, evidences of debt, and things in action; and the word "property" includes both personal and real property. (Gen. Stat. 1897, ch. 1, § 8; Gen. Stat. 1899, § 7009.)

In the making of said contracts evidenced by ordinances the city was not exercising legislative or governmental powers, but *quasi* private power conferred by law, and in such matters it could exercise its business affairs governed by the same rules as apply to an individual or a private corporation. (1 Dill. Mun. Corp. § 27, and cases cited; *Illinois Trust & Sav. Bank v. City of Arkansas City*, 22 C. C. A. 171, 76 Fed. 271, 34 L. R. A. 518.)

36—61 KAN.

We think, therefore, that it was not beyond the power of The Topeka Water Company to mortgage its plant and appurtenances and its property rights under the ordinances mentioned.      The mortgage having created a valid lien on the property, a sale of the same under a decree of foreclosure was authorized and lawful.

The second proposition, involving the right of the Topeka Water Company (the New Jersey corporation) to transact its business in this state must be decided against the contention of the plaintiff.      It will be observed that the articles of incorporation of the Topeka Water Company, obtained under the laws of New Jersey (set out in the statement of the case), contain, among other things, these provisions :

" The company shall have power and its object is to conduct its business and have one or more offices without the state of New Jersey, in such places in the several states and territories of the United States of America as shall from time to time be found necessary or convenient for the purposes of the company's business."

"That the objects for which this company is formed are to do any or all of the things herein set forth to the same extent as natural persons might or could do, and in any part of the United States of America, as principals, agents or otherwise, and in furtherance, and not in limitation, of the general powers conferred by the laws of the state of New Jersey."

The peculiar wording of subdivision $a$, third section of the charter, would seem, on a cursory reading, to indicate that power was granted to the company to operate a water-works plant in the county of Shawnee, Kansas, and elsewhere in the United States, for the sole purpose of supplying the city of Topeka and its inhabitants with water.      But a careful reading of the

language used conveys a broader signification, and indicates authority conferred to erect and maintain water-works in other municipalities in the United States and territories.   While it is a canon of construction that such charters must be interpreted strictly against the donees in the grant, yet we cannot, even in the light of this rule, conclude that under the various sections of this charter the operations of the company and its power to act were confined to Shawnee county, Kansas.   In the consideration of this question, it is immaterial that the incorporators of the New Jersey company perfected its organization under the laws of that state solely for the purpose of owning and taking care of water-works property in Shawnee county, unless such intention was expressed in the charter.   We regard the oral testimony to that effect as irrelevant.   In *Pape v. Capitol Bank,* 20 Kan. 440, 450, Mr. Justice Brewer, speaking for the court, said :

   " In interpreting the powers possessed by a corporation, we must not make the interpretation depend on the manner in which the corporation actually exercises its powers, but upon the intention of the legislature in the enactment of the statute."

If it be determined under the written articles of association (the charter) that the company was granted power therein to operate one or more water-works plants in the state of New Jersey, it then follows that its right to own and operate the property in question is secured.   We think, as before stated, the power was conferred by this charter to own and operate waterworks anywhere in the United States, including New Jersey.   Counsel for the plaintiff suggests that the case of *Land Grant Railway v. Comm'rs of Coffey County,* 6 Kan. 245, is applicable to this inquiry.   In the case

cited a corporation was organized under the laws of the state of Pennsylvania for the purpose of transacting a certain specified business in any other state, territory or country except the state of Pennsylvania. It will be seen that the corporation thus created was expatriated by law at its birth. It was held that, having no domicile in the state of its creation, and having no corporate existence there, it could have none elsewhere, and hence could not be recognized here. The case is not applicable to the facts before us. It is a general rule, from which we have been unable to find any departure, that corporations organized to transact business in the state which created them will be permitted to carry on business in other states so long as they do not depart from the charters under which their original authority was obtained. In the case of the *Bank of Augusta v. Earle*, 13 Pet. 592, 10 L. Ed. 309, Chief Justice Taney said :

" We think it is well settled, that by the law of comity among nations, a corporation created by one sovereignty is permitted to make contracts in another, and sue in its courts ; and that the same law of comity prevails among the several sovereignties of this union. The public and well known, and long continued usages of trade ; the general acquiescence of the states ; the particular legislation of some of them, as well as the legislation of congress ; all concur in proving the truth of this proposition."

Again, in *Christian Union v. Yount*, 101 U. S. 356, 25 L. Ed. 890, Mr. Justice Harlan, speaking for the court, said :

" In harmony with the general law of comity obtaining among the states composing the union, the presumption should be indulged that a corporation of one state, not forbidden by the law of its being, may exercise within any other state the general powers conferred by its own charter, unless it is prohibited

from so doing, either in direct enactments of the latter state, or by its public policy to be deduced from the general course of legislation, or from the settled adjudications of its highest court.''

And this court has repeatedly reiterated the rule stated by the supreme court of the United States. (*O'Brien v. Wetherell*, 14 Kan. 616 ; *A. T. & S. F. Rld. Co. v. Fletcher*, 35 id. 236, 10 Pac. 596 ; *Kansas City Bridge & Iron Co. v. Comm'rs of Wyandotte Co.*, 35 id. 557, 11 Pac. 360.)

It has been the policy to permit foreign corporations chartered under the laws of other states to transact business here. In 1898 an act was passed by the legislature providing for the regulation of foreign corporations and prescribing the method by which they might be permitted to do business in this state. (Laws 1898, ch. 10 ; Gen. Stat. 1899, § 1211, *et seq.*) The defendant corporation has complied with all the conditions of the act mentioned. We do not hold, however, that such recognition gives it power beyond that conferred by the laws of the state of its creation.

Other questions discussed in the briefs do not affect the conclusion reached. Judgment will be entered for the defendant.

JOHNSTON, J., concurring.

DOSTER, C. J. (dissenting from the third and fourth paragraphs of the syllabus and corresponding portions of the opinion) : I concur in the above opinion of Mr. Justice Smith that the franchises acquired from the city of Topeka by The Topeka Water Company (the Kansas corporation) were of the kind denominated as '' secondary,'' and that they constituted a species of property vendible in character, and that

they passed by mortgage foreclosure and sale to Charles F. Street, and that they were acquired from him by the Topeka Water Company (the New Jersey corporation), provided it be a corporation capable of acquiring and holding property in Kansas. I dissent, however, from the view taken of it as a legally constituted corporation with power to do business in this state. The paper quoted in Mr. Justice Smith's opinion is not the charter of the company, and, although that fact has no material bearing upon the question, I mention it for the purpose of accuracy in the use of terms. Such papers are often, perhaps usually, called charters. They are, however, only the articles of association entered into by the corporators. The charter of a corporation is the legislative enactment which grants its franchises and confers upon it its powers. The charter of the New Jersey corporation, so called, is the statute of that state.

It is a fundamental rule in the construction of public grants made without consideration, that they are construed most strongly against the donee. This applies to grants of corporate franchises as well as to grants of all other character. The same rule of construction should apply to the certificate of incorporation or articles of association between the corporators. In stating the objects of their association these corporators choose their own language, and in the exercise of the special privileges they ask and obtain they should be strictly limited by the terms they themselves use.

In the expression of my views it will be unnecessary to enter upon a critical analysis of this anomalously worded writing called the "charter" of the New Jersey corporation. Within its incongruous and ungrammatical mass of verbiage a few important facts

have not been successfully hidden, but stand forth with sufficient prominence to indicate the character of the paper and the purpose of the company. To begin, the instrument localizes the company as a Kansas institution by designating it the "Topeka Water Company." It next states that the object for which the company is formed is "to do any and all the things herein set forth, . . . and in any part of the United States." It next states that the object thus 'herein set forth' is to "build, construct, repair, purchase, own and operate a water-works plant in the county of Shawnee, state of Kansas, and elsewhere in the United States of America, for the purpose of supplying the city of Topeka, and the county of Shawnee in the state of Kansas, . . . with water for public, private and domestic use," etc. The statement of all the other objects for which the company was formed shows such objects to be subsidiary and incidental to the principal one above stated.

It is true that the instrument states that the company was formed to do the things herein set forth "in any part of the United States," but the object herein set forth is "to build, purchase, repair, own and operate a water-works plant, in the county of Shawnee, for the purpose of supplying the city of Topeka with water." By no rules of construction, grammatical or legal, can any other statement of object be evolved out of the nearly incoherent jargon of words which made up this so-called charter. It is a charter for the purpose of doing business in Kansas and nowhere else. Being such, the case is brought within the principle of *Land Grant Railway v. Comm'rs of Coffey County*, 6 Kan. 245, referred to in the majority opinion. While the company whose charter claims were considered in that case was excluded by the terms of

its incorporating act from doing business in the state of its nativity, yet a company organized in one state to do business solely in another stands upon the same footing. A company organized in New Jersey to do business in Kansas is by necessary implication excluded from doing business in the state where organized.

But, while believing that the New Jersey company should be ousted of the franchises and privileges which as a corporation it has been holding and exercising, I do not wish to be understood as denying the right of the incorporators to own the water-works property in question or to carry on the business of furnishing water to the city of Topeka. I think the water-works property and the right to furnish water to the city of Topeka passed from The Topeka Water Company, the Kansas corporation, through the Atlantic Trust Company and Charles F. Street, to the so-called incorporators of the New Jersey company as members of a partnership.

It is a rule, to which I know there are many exceptions, that defective corporate organization will expose the corporators to liability as partners, but I think there could be no exception to the rule that defective corporate organization, preventing the corporators from prosecuting their enterprise in a corporate capacity, would not deprive them of property acquired as a corporation, nor prevent them from transacting the business in which they had been engaged, provided it be such as could be carried on by individuals. (1 Bates, Part. § 6 ; *Holbrook v. St. Paul Fire & Marine Insurance Company*, 25 Minn. 229.) The business of owning a water-works plant and furnishing water to a city is not one which, either by law or by necessity, is to be exclusively conducted by corporations.

What rights the state or the city of Topeka might have as against the New Jersey partnership, in the event the corporators were to be treated as such, are not involved in the case before us, and therefore have not been considered by me.