THE STATE OF KANSAS v. W. W. ATKIN.

No. 12,070.  (67 Pac. 519.)

SYLLABUS BY THE COURT.

1. STREETS AND HIGHWAYS — *Control by State.* The opening and improvement of streets and highways is a matter of concern to the whole people of the state, and the state has paramount authority over it. The obligation to lay out and improve highways is imposed upon the state in its general political capacity, and the legislature may control the work necessary in performing this public duty, whatsoever may be the agency employed in carrying it out.

2. ――――― *Eight-hour Law Applicable to Contractors.* A contractor who undertakes to pave a street under a contract with the mayor and councilmen of a city of the first class is amenable to the penalties of sections 3827, 3828, and 3829, General Statutes of 1901, known as the "eight-hour law," if he permits any of his employees engaged in said work to labor more than eight hours per day.

3. EIGHT-HOUR LAW — *Case Followed.* The case of *In re Dalton,* 61 Kan. 257, 59 Pac. 336, 47 L. R. A. 380, approved and followed.

Appeal from Wyandotte district court; E. L. FISCHER, judge. Opinion filed January 11, 1902. *In banc.* Affirmed.

*A. A. Godard,* attorney-general, *J. S. West, E. A. Enright,* county attorney, and *B. S. Smith,* for The State.

*T. A. Pollock,* for appellant.

The opinion of the court was delivered by

SMITH, J. : The appellant was convicted of a violation of chapter 114 of the Laws of 1891 (Gen. Stat. 1901, §§ 3827–3829). He was charged with having entered into a contract with the mayor and council men of the city of Kansas City, Kan., a city of the first class, for the paving of a public street known as

Quindaro boulevard, and that he hired one Reese, a common laborer, to work for him in laying the pavement, and unlawfully permitted Reese to work more than eight hours per day at such employment.

The question necessary to be considered is whether the city is such an agency of the state in the doing of the work which the appellant contracted to do as to bring the case within the principle of *In re Dalton*, 61 Kan. 257, 59 Pac. 336, 47 L. R. A. 380. It was there decided that Dalton, who undertook to build a courthouse under a contract with the commissioners of a county, having permitted a stone-mason to work for him more than eight hours per day in the construction of the building, was amenable to the penalties of the act. The decision was based upon the fact that the law was a direction by a principal (the state) to one of its agents (the county). It is contended in this case that the city, in awarding the contract to Atkin, was not exercising governmental power but *quasi*-private power, in the exercise of which it was governed by the same rules which apply to an individual or a private corporation. The law which appellant violated must have its application in the light of the fact that municipal corporations are the creatures of the state. The legislature gives them being. They let contracts for the improvement of streets under express authorization of the legislature, and cannot do so in the absence of such authority. In this instance the lawmaking power provided that the cost of the paving which the appellant was constructing should be paid by assessment against the abutting property. It might have provided a different method of payment, or withheld entirely from the city the right to improve its streets.

In *City of Clinton v. Cedar Rapids & Missouri River*

*R. R. Co.*, 24 Iowa, 455, 475, Chief Justice Dillon, speaking for the court, said :

"Municipal corporations owe their origin to and derive their powers and rights wholly from the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the legislature might by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the state, and the *corporations* could not ·prevent it. We know of no limitation on this right, so far as the corporations themselves are concerned. They are, so to phrase it, the mere *tenants at will* of the legislature."

When a city attempts to pave, it must proceed in the manner pointed out by statute. Its officers look to the state law as a guide when declaring the work necessary to be done, and on through at each step, in awarding the contract, the assessment of the cost, and its collection from the property-owners benefited, they must conform strictly to the directions which the state has seen fit to impose.

The opening and improvement of highways is a matter of public concern. The whole body of the people is benefited by the paving of city streets. Though residents of rural districts receive the benefits in a less degree, from the fact that they do not so frequently have occasion to travel over such streets, yet they are open to all alike, and they are referred to in the statutes and in common parlance as *public* highways.

In *The State v. Irrigation Co.*, 63 Kan. 394, 65 Pac. 681, it was said :

"The state has a paramount authority over the subject of highways. It is of interest to the general pub-

lic that the roads which lead from one county to another, and into and through every township and county in the state, should be kept free from impediments to travel, so that communication may be open and convenient from one end of the state to the other."

In *The State, ex rel., v. Comm'rs of Shawnee Co.*, 28 Kan. 431, 433, it was held that the legislature has power to establish a state road and cast the cost and expense thereof upon the county in which the road lies, without the approval of the county commissioners or the people of the county:

"Second, it will be borne in mind that the purpose for which this expense is cast upon the county is a purely public purpose—one that is universally and without question recognized as such. It is not like compelling a county to take stock in a railroad corporation, or to aid in the building of a railroad, or to invest its public moneys in any enterprise in which there is something of private interest. A public highway is a matter solely of public interest. The laying out and keeping in order of highways is one of the ordinary duties of counties and cities."

"In respect to the care, regulation and control of the highways, the city exercises a portion of the powers of the state, subject only to the end in view, the right of the public to their use as public highways, and the higher control of the state herself." (*Branson v. City of Philadelphia*, 47 Pa. St. 329–332.)

See, also, *State, ex rel. Bulkeley, v. Williams*, 68 Conn. 131, 35 Atl. 421, 48 L. R. A. 465, and note at pp. 466 and 467; Tied. Mun. Corp. § 301; *The State v. Freeman*, 61 Kan. 90, 91, 58 Pac. 959. The case of *The People, ex rel., v. Flagg et al.*, 46 N. Y. 401, is pertinent to the question involved.

It is and always has been the duty of the state to lay out and improve highways of travel. The performance

12—64 KAN.

of this duty in cities rests on the state with the same obligation as in unincorporated country districts. The statute gives countenance to this duty upon the state when it places the fee of city streets in the county. The obligation to lay out and improve highways of travel is imposed on the state in its general political capacity, and it follows that the legislature may control the work necessary in performing this public duty, whatsoever may be the agency employed in carrying it out. It may prescribe the plans for the highway in either city or county, and regulate the hours of work required to complete such plans. Under the general road law of the state, all streets and alleys in cities which have been or may hereafter be laid out are declared to be public highways. ( Gen. Stat. 1901, § 6030.) In prescribing the powers of the mayor and councilmen of cities of the first class, such city is constituted a separate road district. (Gen. Stat. 1901, § 727, subd. 34.)

The city, in contracting to pave Quindaro boulevard, exercised delegated authority and acted as an agent for the state. The latter did not, by authorizing the mayor and council to lay the pavement, surrender its paramount authority over the control of the city streets. If the state had been doing this work, it cannot be denied that it might at its pleasure have given the current rate of per diem wages in the city for eight hours' work performed by any of its servants. This is the principle of the Dalton case.

The case of *The State v. Water Co.*, 61 Kan. 547, 60 Pac. 337, is cited as an authority by counsel for appellant. It was there stated that a city, in making contracts for water-supply, was exercising *quasi*-private power and that in respect to such engagements it was

governed by the same rules which apply to an individual or private corporation.   To the same effect, see *The State v. Downs*, 60 Kan. 788, 57 Pac. 962.   We nowhere find it said in our decisions that, as to waterworks and the like, which are of local and not state concern, the state has paramount control.   They differ from public roads in the building and maintenance of which all the people of the state are interested.

The fact that the abutting property-owners are charged more for the improvement by the application of the restrictive provisions of the law reducing the hours of labor may be admitted ; yet if the work had been done by the state itself, which, as we have shown, has supreme authority in such matters, the property-owners could not complain that it employed and paid its servants conformably to the statute in question.

There can be no distinguishing difference between the acts of the contractor in the employ of the county passed upon in the case of *In re Dalton*, supra, and those of the appellant here.   Both were proceeding under contracts made with them by the agents of the state, and the principal had power to direct that eight hours should constitute a day's work for all persons laboring in its behalf.

The judgment of the court below will be affirmed.

JOHNSTON, CUNNINGHAM, GREENE, ELLIS, POLLOCK, JJ., concurring.

DOSTER, C. J. (concurring specially) :   I concur in the decision of this case and in all the reasoning upon which it is based, but, lest the remarks made in some of the closing paragraphs of the opinion concerning *The State v. Water Co.*, 61 Kan. 547, 60 Pac. 337,

should be construed as an intimation that a different rule might apply in the case of purely municipal improvements, such as water-works, from the one applicable to improvements made by cities as agencies of the state, I desire to say that I do not perceive the occasion for the application of any different rule.