SALLIE WILLIAMS v. THE METROPOLITAN STREET-
RAILWAY COMPANY.

No. 13,224.    (74 Pac. 600.)

SYLLABUS BY THE COURT.

FOREIGN CORPORATIONS—*Limitation of Actions.* A foreign corporation is "out of the state," within the meaning of section 21 of the code (Gen. Stat. 1901, § 4449), and for that reason cannot avail itself of the statute of limitations of this state.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed December 12, 1903. Reversed.

STATEMENT.

The following is the agreed statement of facts on which this cause was tried in the court below:

"2d. It is agreed that the plaintiff is a widow of the age of 45 years, and that on the 15th day of July,

2—68 KAN.

1894, the plaintiff was 38 years of age, and was of sound mind, and ever since has been of sound mind, and under no legal disability.

"3d. That plaintiff, on the 15th day of July, 1894, was, ever since has been and now is a resident and citizen of Wyandotte county, Kansas.

"4th. That the accident, cause of action and injury for which this action is brought occurred and accrued in the county of Wyandotte and state of Kansas on the 15th day of July, 1894.

"5th. That the injury and cause of action for which this action is brought is one in tort for personal injuries received by the plaintiff on the 15th day of July, 1894, by reason of the negligent starting of a passenger-car of the defendant by its employees, while the plaintiff, who was a passenger on such car, was alighting therefrom, whereby the plaintiff was thrown down and injured.

"6th. It is further agreed that the plaintiff by being thrown down and injured, as stated in paragraph 5 hereof, was damaged in the sum of one hundred and fifty dollars ($150).

"7th. It is further agreed that the defendant is and was at all times herein mentioned a corporation, organized under the laws of the state of Missouri, and has its principal office in Jackson county, state of Missouri, where the board of directors meet and the president, vice-president, secretary and treasurer, chairman of the board of directors and general superintendent reside and have their offices; that all employees, both for the line in Kansas and Missouri, are hired in Missouri, and all supplies are purchased and all contracts therefor are made, and all funds of the company are kept there.

"8th. That the defendant was, on the 15th day of July, 1894, ever since has been, and now is, a street-railway company, engaged in carrying passengers from Kansas City, in the state of Missouri, into and through Kansas City, Argentine, and Rosedale, in Wyandotte county, Kansas, and from Kansas City, Argentine, and Rosedale, in Wyandatte county, Kansas, to Kansas City, Jackson county, Missouri.

"9th. That a large percentage, to wit, about 33⅓ per cent., of all the business of said defendant company was, on the 15th day of July, 1894, ever since has been, and now is, transacted in the county of Wyandotte and state of Kansas.

"10th. That on the 15th day of July, 1894, and for a long time prior thereto, ever since said date, and now, the defendant has owned, and every day since said 15th day of July, 1894, has regularly operated, its cars over fifteen miles of double-track street-railway upon and along the streets of Kansas City, Argentine, and Rosedale, in Wyandotte county, Kansas.

"11th. That the defendant's railway-tracks so laid in the streets of Kansas City, Kan., Argentine, and Rosedale, and the operation of its cars thereon, are authorized by and pursuant to contracts and stipulation contained in ordinances and franchises granted to said defendant by the cities of Kansas City, Argentine, and Rosedale, all cities of Wyandotte county, Kansas.

"12th. That on the 15th day of July, 1894, and at all times since said date, the defendant has owned, occupied and maintained car barns and offices at the northeast corner of Tenth street and Minnesota avenue and at the northeast corner of Eleventh street and Osage avenue, in Kansas City, Wyandotte county, Kansas.

"13th. That upon the 15th day of July, 1894, and constantly ever since said date, the defendant has had in charge of its car barns and offices mentioned in paragraph 12 hereof a division superintendent and assistant division superintendent, both day and night.

"14th. That the division superintendent and the assistant division superintendant, mentioned in paragraph 13 hereof, have at all times mentioned herein had charge of all property of the defendant in Wyandotte county, and have had offices in said car barns, where the employees engaged in the operation of the defendants company's cars on the divisions of which they are division superintendents report each day to said division superintendent, and by him are directed in the management and operation of said cars

in Kansas, and in which also has been and is transacted by said division superintendents all business transacted in Wyandotte county, Kansas, relative to the management and operation of said railway and maintenance of said company's cars and lines of railway in said county and 'state, subject to the general supervision and control of their superior officers in Kansas City, Mo.

"15th. That this action was commenced in said court on the 1st day of June, 1901, and service in this cause was made upon the assistant division superintendent in charge of the station and office of the defendant at Tenth street and Minnesota avenue, mentioned in paragraph 12 hereof."

Judgment was entered in favor of the defendant. Plaintiff in error has come to this court by proceedings in error.

*Getty, Hutchings & Dean,* for plaintiff in error.

*Miller, Buchan & Morris,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: The sole question involved is whether a foreign corporation transacting business in this state can plead the statute of limitations in bar of a cause of action originating here in favor of a resident plaintiff. The statutory language applicable to the case is as follows:

"If when a cause of action accrues against a person he be out of the state, . . . the period limited for the commencement of the action shall not begin to run until he comes into the state, . . . and if after the cause of action accrues he depart from the state, : . . the time of his absence . . . shall not be computed as any part of the period within which the action must be brought." (Gen. Stat. 1901, § 4449.)

By the thirteenth paragraph of section 7342 it is

provided that the word "person" may be extended to corporate bodies.

It is the contention of counsel for defendant in error that because, at the time of the injury to plaintiff below, the street-railway company was doing business in Kansas, and had a superintendent here on whom process could be served, and so continued to transact business and maintain an office in this state until the action was begun, for the purpose of invoking the bar of the statute of limitations it cannot be held that the corporation was out of the state during said time.

In *Mary E. Lane, Adm'r, v. The National Bank of the Metropolis,* 6 Kan. 74, it was held that the personal absence of the debtor from the state, even if he retained a residence here at which process against him might be served, was sufficient to take the case out of the statute. This case has been followed repeatedly. (*Hoggett v. Emerson,* 8 Kan. 262; *Morrell v. Ingle,* 23 id. 32; *Conlon v. Lanphear,* 37 id. 431, 15 Pac. 600; *Ament v. Lowenthall,* 52 id. 706, 35 Pac. 804; *Coale v. Campbell,* 58 id. 480, 484, 49 Pac. 604; *Investment Co. v. Bergthold,* 60 id. 813, 58 Pac. 469.)

In the early case of *Bank of Augusta v. Earle,* 13 Pet. 519, 588, 10 L. Ed. 274, Chief Justice Taney said:

"It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by force of the law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty."

Counsel for the street-railway company are in error when they assert that this case has been overruled by *St. Clair v. Cox,* 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222. The last decision went no further than to

hold that an Illinois corporation could not be subject to a judgment *in personam* in Michigan unless at the time of service of summons it was doing business in the latter state.

In *Shaw v. Quincy Mining Company*, 145 U. S. 444, 450, 12 Sup. Ct. 935, 937, 36 L. Ed. 768, Mr. Justice Gray, after quoting the above language of Chief Justice Taney, said:

"This statement has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicile, the habitat, the residence, the citizenship of the corporation can only be in the state by which it was created, although it may do business in other states whose laws permit it."

In the same opinion the words of Mr. Justice Curtis in *Lafayette Ins. Co. v. French*, 18 How. 404, 15 L. Ed. 451, are approved. He said:

"This corporation, existing only by virtue of a law of Indiana, cannot be deemed to pass personally beyond the limits of that state." (See 1 Clark & Mar. Priv. Corp. 356.)

In *Land Grant Railway v. Com'rs of Coffey County*, 6 Kan. 245, 253, Mr. Justice Valentine, speaking for the court, said:

"A corporation, in order to have any legal or valid existence, must have a home, a domicile, a principal place of doing business, within the boundaries of the state which creates it. It may send agents into other states to do business, but it cannot migrate in a body. If it attempts to migrate in a body, to go beyond the jurisdiction of the laws which bind and hold it together, it dissolves into its original elements, and the persons who comprise it become only individuals. And even where a corporation has a legal and valid existence in its own state, the only recognition that

other states will give to it is such as the rules of courtesy and comity between states require.''

The corporation sued in this action, like all others, is, in the words of Chief Justice Marshall, ''an artificial being, invisible, intangible, and existing only in contemplation of law.''   In *The State v. Water Co.*, 61 Kan. 547, 558, 60 Pac. 337, 341, it was said : ''A corporation exists by the will of a sovereign power. To this superior authority it owes an allegiance which it cannot abjure.''

If the Metropolitan Street-railway Company was, in contemplation of law, present in this state from May, 1894, until June, 1901, then the action was barred.   The corporation was sued.   It is not contended that the body corporate moved itself into this state, but that, having agents here, their presence, while transacting business in its behalf, amounted to the presence of the corporation itself, within the meaning of the statute of limitations above set out.   If, as stated by Chief Justice Taney, a corporation cannot migrate from one state to another, then the intangible body which was sued in this action was at all times absent from this state and present in the state of Missouri.   In *Tioga R. R. v. Blossburg & Corning R. R.*, 20 Wall. 137, 149, 22 L. Ed. 381, Mr. Justice Hunt said :

''We do not say that a corporation cannot run its cars in a state other than that where it is incorporated and where it is domiciled, nor that it cannot by its lawful agents make contracts and do other business in such state.   We assume that it can.   In doing these things it does not lose its residence in the former state nor become a resident of the latter.   It still resides in the state where it is incorporated *and does not depart therefrom.*''

The language above quoted was used when the

court was considering the effect of a section of the New York statute of limitations exactly like ours. It is true, as counsel state, that in the case last referred to it was held by a majority of the court that in New York no personal judgment can be obtained against a foreign corporation by service on its officers or agents although it may be doing business in that state. We do not conclude, however, that a different result would have been reached had the law there permitted a valid personal judgment to be rendered, based on service on the corporation's agents in New York. In the brief of counsel for the street-railway company it was said :

. "The full object and purpose of our law has been subserved when a plaintiff for the full period of limitation has been in a position to sue upon his claim and recover a personal judgment against the defendant."

The same argument was made in behalf of Senator Lane in 6 Kan., *supra*, who maintained a residence in Lawrence, in this state, where personal service could have been had by leaving a copy of the summons under section 64 of the code (Gen. Stat. 1901, § 4494), and a personal judgment obtained thereon, which would be good everywhere. The court, however, held that the statute of limitations which excludes the time during which the debtor is absent from the state should receive the natural meaning the words used import. The plaintiff in the Lane case was nowise obstructed or delayed in bringing his action by the absence of the debtor in Washington, for during the whole time of such absence he could have obtained service of summons as valid in all respects as if had personally on Mr. Lane in this state.

The case of *N. M. R. R. Co. v. Akers*, 4 Kan. 453, 96 Am. Dec. 183, was an action against a Missouri railroad corporation for breach of contract. The latter

pleaded the statute of limitations.   The court said, at page 475:

"The reply to the plea of the statute of limitations was that the defendant was a foreign corporation, created and existing under the laws of Missouri, and having no corporate existence under the laws of Kansas.   And there was testimony absolutely proving these allegations.   So that the assumption of fact in the instruction is hardly sustained by the record.   But we have already attempted to show that a corporation is a person under the code and within the meaning of section 28—an artificial being, a corporate body, confined to the state of Missouri, where it remained until this suit was brought, for aught that appears from the record, and is subject to the exceptions enumerated in section 28 of the code.   To hold otherwise would be to say that the legislature intended to discriminate in favor of a foreign corporation, without any just grounds for such a conclusion. We think the principle of this instruction was settled by the court in the case of *Bonifant v. Doniphan* (3 Kan. 35), and against the plaintiff in error."

There was no showing, however, in the case referred to that the foreign corporation had at any time transacted business in this state.   The court based its decision on the authority of *Bonifant v. Doniphan and Walker*, 3 Kan. 26, which first adopted the construction of the limitation statute afterward adhered to in the Lane case and others cited above.   It will be noted that the court applied the language of section 4449 of the present statute, *supra*, to an artificial being—a corporate body—and gave it the same effect as if an absent individual were defendant in the action.   The same application of the statute was made in *Ætna Life Ins. Co. v. Koons*, 26 Kan. 215, the third paragraph of the syllabus reading:

" Where the petition alleges that the defendant is a foreign insurance corporation, created and existing

under the laws of Connecticut, with its principal office in the city of Hartford, in that state, it sufficiently appears therefrom that the defendant is a non-resident, and not present in the state, and an objection upon the ground that the cause of action therein set forth is barred by the statute of limitations, is not well taken, because the exceptions enumerated in section 21 of the code apply.''

A corporation must be thought of without reference to the members who compose it. The latter may die but the body corporate does not. While a valid judgment may be taken against a corporation in this state by service here on its officers or agents transacting business for it, yet such fact does not compel us to hold that, within the meaning of our limitation law, it is personally present in the state when served. In the case of Senator Lane a valid personal judgment could have been obtained against him by his creditor by service of summons left at his usual place of residence in Kansas, although at the time he was temporarily absent in Washington in discharge of his official duties. In *Foster v. Caskey*, 66 Kan. 600, 72 Pac. 268, it was held that, although the principal business of a foreign corporation was transacted in this state, such fact did not authorize the taxation of its capital stock here. The case of *Commonwealth v. Standard Oil Co.*, 101 Pa. St. 119, 146, was quoted:

''The domicile of the Standard Oil Company is in the state of Ohio. Being a corporation, it is an invisible, artificial and intangible thing. When it sent its agents to this state to transact business, it no more entered the state in point of fact than any other foreign corporation, firm or individual who sends an agent here to open an office or branch house.''

Wisconsin has a limitation statute like ours. The clause relevant here reads:

''If, when the cause of action shall accrue against

any person, *he shall be out of this state*, such action may be commenced within the terms respectively limited (six years) after such person shall return or remove to this state."

This provision was held to apply to the temporary absence of a resident of the state, although during such absence a summons might have been served by leaving it at his usual place of abode. (*Parker v. Kelly*, 61 Wis. 552, 555, 21 N. W. 539.) Following this, in *Larson v. The Aultman & Taylor Co.*, 86 Wis. 281, 286, 56 N. W. 915, 39 Am. St. Rep. 893, it was decided that a foreign corporation came within the purview of the limitation statute above quoted. The court said that the word "person" being applicable to corporations as well as to individuals it was obvious that when the cause of action accrued the corporation was "out of the state." In *The Traveler's Ins. Co. v. Fricke*, 99 Wis. 367, 377, 74 N. W. 372, 78 N. W. 407, 41 L. R. A. 557, the case of *Larson v. The Aultman & Taylor Co.*, supra, was followed. On a motion for rehearing it was said:

"The appellant argued that . . . a foreign corporation which has acquired a domicile in this state for the purposes of litigation is not a non-resident in such sense as to suspend the operation of the statute of limitations against it. 6 Thompson, Corp. § 7841.

"The motion was denied."

In most of the cases cited by counsel for defendant in error the right of a foreign corporation to plead the statute of limitations is made to depend on whether valid service could be had on it in the state where sued. (*Winney v. Sandwich Mfg. Co.*, 86 Iowa, 608, 18 L. R. A. 524; *Turcott v. Railroad*, 101 Tenn. 102, 45 S. W. 1067, 40 L. R. A. 768, 70 Am. St. Rep. 661.) As we have shown, such is not the test in this state.

The last case cited expressly recognizes that the doctrine contended for by defendant in error does not obtain in Kansas. It may be said that a foreign corporation doing business in this state through agents is constructively present here for the purposes of valid service of summons on it although it is actually out of the state. (*Merchants' Manuf'g Co. v. Grand Trunk Ry. Co.*, 13 Fed. [C.C.] 358.) The constructive presence of Senator Lane in Kansas at his place of abode in Lawrence wherè valid service might have been had did not avail him during his actual absence from the state.

An examination of the decisions of different states on the subject in hand will disclose that in almost all of them, where it has been held that a foreign corporation situated like defendant in error may invoke the limitation laws of the jurisdiction where it is sued, statutory provisions differing from ours exist. A notable exception, however, is found in Nebraska, where under a statute like section 4449, General Statutes of 1901, *supra*, the doctrine of the Lane case and others cited above is denied. In *Bauserman v. Blunt*, 147 U.S. 647, 657, 13 Sup. Ct. 466, 470, 37 L. Ed. 316, the court said:

"But what may be the law of Nebraska is immaterial. The case at bar is governed by the law of Kansas, and the duty of this court to follow as a rule of decision the settled construction by the highest court of Kansas of a statute of that state is not affected by the adoption of a different construction of a similar statute in Nebraska or in any other state."

On the question involved see, also, *Boardman et al. v. Lake Sh. & Mich. So. R'y. Co.*, 84 N. Y. 157, and cases cited; *The State v. National Accident Society of New York*, 103 Wis. 208, 79 N. W. 220; *Hanchett v. Blair*, 100 Fed. 817, 41 C. C. A. 76; *Barstow v. Union*

*Con. S. M. Co.*, 10 Nev. 386; *Clarke v. Bank of Mississippi*, 10 Ark. 516, 52 Am. Dec. 248.

Whether foreign corporations which have purchased or leased railroads in this state, as provided in section 5871, General Statutes of 1901, are affected by the principle involved in this case, we do not decide.

The judgment of the court below will be reversed and the cause remanded for a new trial.

All the Justices concurring.